IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| STUDENTS FOR LIFE ACTION,<br><br>Plaintiff,<br><br>v.<br><br>MARTY JACKLEY, in his official capacity as Attorney General of the State of South Dakota, and<br><br>MONAE JOHNSON, in her official capacity as South Dakota Secretary of State,<br><br>Defendants. | No.   3:23-cv-3010<br><br><br>**Complaint** |

## INTRODUCTION

1. The First Amendment right to freedom of speech includes the right not to speak. When the government forces someone to speak a government-drafted message he would not otherwise say, courts must subject that compulsion to the highest level of First Amendment scrutiny—that is, strict scrutiny.

2. But when a nonprofit organization speaks out on issues related to candidates, officeholders, or ballot questions in South Dakota, it is not free to communicate its own message. Instead, the law requires the organization to include a *government* message in all of its communications by naming its top five donors.

3. That forced speech distracts from the message an organization wishes to communicate to the public. It also creates the unmistakable tendency to chill speech by subjecting donors identified in advertisements to "cancel culture" harassment, "doxxing," and other retaliation from people who disagree with Plaintiff's message. Further, the threat of future retaliation will chill speech by preventing donors from giving money to support advertisements in the first place.

4. South Dakota cannot justify this compulsion of speech because it is not narrowly tailored to serve a sufficient government interest.

5. Plaintiff Students for Life Action has engaged in independent expenditures in South Dakota in the past and intends to do so again in future elections, including the 2024 election. Plaintiff does not wish to disclose its top five donors in its advocacy communications as the law requires.

6. Plaintiff therefore brings this lawsuit to protect its core First Amendment rights to free speech and association.

## PARTIES

7. Plaintiff Students for Life Action is a 501(c)(4) nonprofit social-welfare organization based in Fredericksburg, Virginia, which frequently engages in advocacy nationwide, including advocacy in South Dakota.

8. Defendant Marty Jackley, sued in his official capacity, is the Attorney General of South Dakota.

9. Defendant Monae Johnson, sued in her official capacity, in the Secretary of State of South Dakota.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction because this action presents a federal question. 28 U.S.C. §§ 1331, 1343. Specifically, this action arises out of the First and Fourteenth Amendments of the United States Constitution, and Plaintiff brings this action under 42 U.S.C. § 1983.

11. Personal jurisdiction exists because the Attorney General of South Dakota is sued in his official capacity, is responsible for enforcement of the statute at issue, and maintains his office in this District.

12. Further, personal jurisdiction exists because the Secretary of State is sued in her official capacity, has authority to administer fines for failures to comply with campaign finance disclosures, and maintains her office in this District.

13. Venue is appropriate under 28 U.S.C. § 1391(b) because the Defendant resides in and has his office in this District, and the events giving rise to the claim took place in this District.

## FACTUAL ALLEGATIONS

**Background**

14. Students for Life Action is a nonprofit organization dedicated to training and mobilizing this generation of pro-life leaders to impact public policy and influence key elections.

15. Students for Life Action engaged in independent expenditures in South Dakota on June 6, 2022—the day before the June 2022 primary election—to inform voters about 12 incumbent legislators' voting records on banning chemical abortions and about their responses to candidate surveys. Each of these independent expenditures cost Students for Life Action $116.62.

16. Students for Life Action undertakes independent expenditures in state and federal races in many other states as well. In those other states, Students for Life Action has spoken through calls, direct mail (listing voting records or other various facts about candidates), and social media posts about candidates.

17. Students for Life Action also undertakes issue advocacy communications in many states throughout the calendar year. These communications concern public officeholders and their stances or votes on important public issues.

18. In the next two years, Students for Life Action intends to communicate with the public in South Dakota about candidates, political parties, and public office holders, through independent expenditures exceeding $100 in value.

19. Students for Life Action, on advice of its counsel, always seeks to comply fully with applicable state laws and regulations for campaign-related speech.

**South Dakota Codified Law § 12-27-16**

20. Under South Dakota law—and under the First Amendment—nonprofit organizations may raise and spend unlimited funds to express their views on candidates, officeholders, ballot questions, and political parties, as long as they do so independently—that is, without control, coordination, consultation, or request of any "candidate, political committee, or agent of a candidate or political committee." S.D. Codified Laws § 12-27-16 (2022); *Inst. for Free Speech v. Jackley*, 340 F. Supp. 3d 853, 856 (D.S.D. 2018).

21. But South Dakota law forces nonprofit organizations that make such independent expenditures to include a government message in their advocacy communications. When a nonprofit organization spends more than $100 "for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party," it must "append to or include in each communication a disclaimer that clearly and forthrightly" states "'Top Five Contributors,' including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication." S.D. Codified Laws § 12-27-16.

22. S.D. Codified Laws § 12-27-16 was amended to include the "Top 5 Contributors" rule under Governor Daugaard, who signed the rule into law on March 20, 2013.[1]

23. The statute applies to *any communication* at *any time*—regardless of whether the election is three weeks, three months, or three years away. S.D. Codified Laws § 12-27-16.

**Enforcement and previous challenges of S.D. Codified Laws § 12-27-16**

24. The law charges the Defendant Secretary of State with enforcing its civil penalties. S.D. Codified Laws § 12-27-29.2

25. South Dakota law makes failure to disclose donors in communications a *crime*: a nonprofit that fails to make the disclosure commits a Class 2 misdemeanor. S.D. Codified Laws § 12-27-16. A subsequent offense within one calendar year is a Class 1 misdemeanor. *Id.*

26. The penalty for a Class 2 misdemeanor is thirty days imprisonment, a five hundred dollar fine, or both. S.D. Codified Laws § 22-6-2. The penalty for a Class 1 misdemeanor is one year of imprisonment, a two thousand dollars fine, or both. *Id.*

27. The law charges the Defendant Attorney General with enforcing its criminal penalties. S.D. Codified Laws § 12-27-35. The Attorney General may also

---

[1] https://sdlegislature.gov/Statutes/Session_Laws/Chapter/5286.

bring an action for a civil penalty of up to $10,000 per violation. *Id.* The law also empowers the Attorney General to demand access to a nonprofit's records if necessary for such enforcement. S.D. Codified Laws § 12-27-36. And the law separately authorizes the Attorney General to bring actions for civil penalties of up to $2,000 per violation for violations of the independent expenditure statute. S.D. Codified Laws § 12-27-43.

28. The Defendant Attorney General has announced that one of his top priorities is expanded enforcement of South Dakota's campaign finance statutes. Annie Todd, *Attorney General Marty Jackley wants to tackle election integrity*, Argus Leader (Jan. 19, 2023). He has sought new legislation to allow his office to prosecute campaign finance violations. *South Dakota Attorney General Jackley Announces Legislative Package*, Press Release (Jan. 17, 2023). He has criticized decisions by his predecessors not to vigorously enforce campaign laws. John Hult, *Ex-candidate's case helps spur election law proposal from attorney general*, South Dakota Searchlight (Jan. 19, 2023).

29. The top-five donor rule that Plaintiff challenges has already been challenged for violating nonprofit groups' First Amendment rights. Indeed, this Court entered a preliminary injunction against it. *Inst. for Free Speech v. Jackley*, 340 F. Supp. 3d 853, 862 (D.S.D. 2018). That case became moot, however, because the plaintiff organization could not point to likely future elections that

would involve speech subject to the Act. *Inst. for Free Speech v. Ravnsborg*, 416 F. Supp. 3d 894, 897 (D.S.D. 2019).

**Injury to Plaintiff**

30. The top-five donor rule injures Plaintiff Students for Life Action, and Plaintiff therefore has standing to bring this action, because Plaintiff engages in public communications subject to the rule.

31. Plaintiff also has standing because the rule chills the speech of Plaintiff's donors for fear of exposure and retaliation.

32. In the First Amendment context, and particularly for chilled speech, the Supreme Court has recognized a "lessening of prudential limitations on standing." *See Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). Indeed, "when there is a danger of chilling speech," society's interest in challenging a statute may very well "outweigh" the desire to avoid constitutional adjudication. *Id.* If a plaintiff challenges a statute because it causes someone "not before the court to refrain from constitutionally protected speech or expression," this is an injury sufficient to confer standing. *Id.* at 956–57.

33. This case comes amid a time of national reckoning with "cancel culture." Public identification with controversial causes and organizations can result in significant harassment and threats.

34. South Dakota's on-ad donor disclosure law discourages donors from making contributions to nonprofits like Students for Life Action that advocate positions with which they agree, for fear that their names will be highlighted in public advertisements. The loss of donors who are deterred by negative reactions to their publicly announced donations is an injury to Students for Life Action. *See* Stan Oklobdzija, *Public Positions, Private Giving: Dark Money and Political Donors in the Digital Age*, Research & Politics (2019) (concluding "disclosure laws have an effect on a donor's calculus to contribute to a political cause").

35. People who make donations that are disclosed may become targets of "cancel or call-out culture that has resulted in people losing employment, being ejected or driven out of restaurants while eating their meals; and where the Internet removes any geographic barriers to cyber harassment of others." *Ams. for Prosperity v. Grewal*, No. 3:19-cv-14228-BRM-LHG, 2019 U.S. Dist. LEXIS 170793, at *61 (D.N.J. Oct. 2, 2019); *see also Dakotans For Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022).

36. Going hand-in-hand with cancel culture is "doxxing," a practice victimizing "liberals and conservatives alike." Chaelin Jung, *Twitter, Don't Do Your Thing: Anti-Doxxing Legislation Is Urgently Needed to Stop This Out-of-Control Practice*, Brown Political Review (April 6, 2021).[2] "Doxxing" became the

---

[2] https://brownpoliticalreview.org/2021/04/twitter-dont-do-your-thing/.

widely-used term for publicly posting someone's personal information "as a form of revenge" to promote harassment, violence, and intimidation. *Id.* This information often includes an individual's home address, and some people who have been "doxed" have even had to flee their homes in the interest of safety. *Id.*

37. Doxxing occurs repeatedly to supporters of the pro-life cause. In 2021, for example, doxxing victimized a Texas Right to Life staffer after his home address was widely circulated on the internet. He received numerous death threats, including ones stating, "we know where you live." Steven Ertelt, *Pro-Life Leader Gets Death Threats After Planned Parenthood Doxxing: "Die! You Should Have Been Aborted!"* LifeNews.com (Sep. 14, 2021).[3]

38. Students for Life Action is aware of a substantial surge in doxing and "cancel culture" activity targeting pro-life organizations and their supporters since the leak of the Supreme Court's draft opinion in *Dobbs v. Jackson Women's Health Organization* in May 2022. Pro-lifers have seen "unprecedented levels of threats, vandalism and acts of destruction" nationwide since *Dobbs*. Angie Leventis Lourgos, *Arson. Vandalism. Threats. Abortion Clinics, Abortion Opponents Face Violence After the Fall of Roe*, Chi. Trib. (Feb. 5, 2023).[4]

---

[3] https://www.lifenews.com/2021/09/14/pro-life-leader-gets-death-threats-after-planned-parenthood-doxxing-die-you-should-have-been-aborted/.
[4] https://www.chicagotribune.com/news/breaking/ct-violence-abortion-clinics-pregnancy-centers-20230205-6h6lfk32jncqnowxuvayb33yea-story.html.

39. Not only pro-life organizations like Students for Life Action, but also the companies and individuals who donate financially to pro-life organizations and politicians, have been targeted for negative publicity, boycotts, and other retribution. *See, e.g.*, Nicole Gaudiano, et al., *AT&T, Walmart, Citi, and Other Megacorporations Bankrolled a Wave of State Abortion Bans*, Business Insider (June 24, 2022)[5]; Brian Schwartz, *Business Leaders Helped to Bankroll the Anti-Abortion Groups Who Could Soon See* Roe v. Wade *Overturned*, CNBC.com (May 6, 2022)[6].

40. Retaliation against donors to socially conservative causes is not a new phenomenon. In 2014, Mozilla CEO Brendan Eich was forced to resign from his position after his donation to California's Proposition 8 campaign sparked "outrage." Heather Kelly, *Mozilla CEO Resigns over Anti-Same-Sex-Marriage Controversy*, CNN BUSINESS (April 3, 2014).[7] Even though Eich made the donation in 2008, he received harassment for the donation in 2014, causing him to leave a company he co-founded in 1998. *Id.*

41. The Supreme Court recognizes that facial challenges to overbroad statutes that chill speech "are allowed not primarily for the benefit of the litigant, but for

---

[5] https://www.businessinsider.com/state-abortion-ban-sponsors-bankrolled-by-att-walmart-citi-corporations-2022-5.
[6] https://www.cnbc.com/2022/05/06/roe-v-wade-opinion-business-leaders-donate-to-anti-abortion-groups.html?__source=sharebar|twitter&par=sharebar.
[7] https://money.cnn.com/2014/04/03/technology/mozilla-ceo/index.html.

the benefit of society." *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984).

**Relevant legislation**

42. South Dakota leaders have recognized the serious implications of doxxing and the chilling effect it has on donors, taking some proactive steps to address this problem. On March 3, 2021, Governor Kristi Noem signed into law a bill reforming the South Dakota Nonprofit Act. South Dakota leaders recognized, in overwhelmingly approving the measure, that donor disclosures have the effect of subjecting donors to harassment and intimidation.

43. That bill, HB1079, states:

> An executive branch agency, bureau, department, division, board, commission, officer, or official may not require any annual filing or reporting of a nonprofit corporation or charitable trust that is more stringent, restrictive, or expansive than that required by state or federal law.

S.D. §§ 47-24-19 (2021).

44. Governor Noem signed into law a companion bill, SB103, on March 29, 2021, which provided a specific right to donor privacy. That new statutory section contains the following provision:

> Any natural person who supports a nonprofit corporation has a right to personal privacy and confidentiality regarding the release of personal affiliation information by a public agency. A public agency may not:

    (1) Require any natural person or nonprofit corporation to provide the public agency with personal affiliation information or otherwise compel the release of personal affiliation information;

    (2) Release, publicize, or otherwise publicly disclose personal affiliation information in the public agency's possession; or

    (3) Request or require a current or prospective contractor or grantee with the public agency to provide the public agency with a list of nonprofit corporations to which it has provided financial or nonfinancial support.

S.D. §§ 47-24-22 (2021).

45. The new statutory framework also creates a right to sue for any person who is harmed by an unlawful disclosure. S.D. §§ 47-24-23 (2021).

46. However, the South Dakota legislature has not yet taken similar steps to protect nonprofit donors in the election communication context, even though the same concerns cited by state officials are equally applicable in this context.

## COUNT I

**The on-ad donor disclosure rule violates 42 U.S.C. § 1983 and the First and Fourteenth Amendments.**

47. The allegations contained in all preceding paragraphs are incorporated herein by reference.

48. South Dakota's top-five donor disclosure rule, S.D. Codified Laws § 12-27-16, compels speech: it prescribes a government-drafted script that nonprofit

organizations, including Plaintiff, must speak in all of their communications covered by the rule.

49. The rule is content-based: it applies only to a communication that "concerns a candidate, public office holder, ballot question, or political party."

50. Laws that compel speech are subject to strict scrutiny. *Telescope Media Grp. V. Lucero*, 936 F.3d 740, 754 (8th Cir. 2019).

51. Speech regulations based on the content of a message are likewise subject to strict scrutiny. *Id.*

52. Laws regulating speech about elections are usually subject to strict scrutiny.

53. South Dakota's law violates the First Amendment, incorporated against South Dakota through the Fourteenth Amendment, on its face.

54. The statute compels speech and is thus subject to strict scrutiny. But even if treated as a campaign finance rule subject only to exacting scrutiny, the government cannot show a sufficient interest to justify the burden placed on Plaintiff. *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 875 (8th Cir. 2012) (en banc).

55. These government-imposed content-altering scripts cannot survive strict scrutiny because they cannot be justified by any compelling interest. Nor are they

the least restrictive means of providing such information. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018).

56. The statute cannot survive exacting scrutiny because South Dakota does not have a substantial interest in forcing nonprofits to disclose their donors in advocacy communications, nor is the law narrowly tailored. *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 875 (8th Cir. 2012) (en banc).

57. The state's informational interest does not suffice. *Calzone v. Summers*, 942 F.3d 415, 425 (8th Cir. 2019). The informational value of knowing Plaintiff's top-five donors is significantly less than the informational value of knowing the speaker/sponsor of the expenditure itself. Moreover, the informational interest as structured here may be less helpful because Students for Life Action's top five donors nationally in a calendar year may not be representative of or familiar with the organization's work specifically in South Dakota, or familiar to South Dakotans.

58. South Dakota's on-ad donor disclaimer law is not narrowly tailored. South Dakota does not require on-ad donor disclaimer by candidates, political action committees, political parties, or ballot measure committees—only independent expenditure committees are required to disclose this information on their ads.

59. The law is not narrowly tailored because it applies at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election. S.D. Codified Laws § 12-27-16.

60. The law is not narrowly tailored because it applies to communications as low in value as $100.

61. The law is not narrowly tailored because it imposes an on-ad disclaimer requirement instead of only an off-ad disclosure requirement.

62. Independent expenditure groups must also disclose any independent communication expenditure to the State by filing an independent communication expenditure statement within 48 hours "of the time that the communication is disseminated, broadcast, or otherwise published." S.D. Codified Laws §§ 12-27-16(2).

63. The informational value gained by South Dakota's on-ad donor disclaimer law does not outweigh the burden imposed on Students for Life Action, its donors, and other nonprofit civil society speakers.

64. Plaintiff is entitled to an injunction under 42 U.S.C. § 1983 barring the continued enforcement of S.D. Codified Laws § 12-27-16.

## PRAYER FOR RELIEF

Plaintiff Students for Life Action respectfully requests that this Court:

a. Declare that S.D. Codified Laws § 12-27-16 compels speech in violation of Plaintiff's right to freedom of speech under the First and Fourteenth Amendments;

b. Enjoin Defendants from enforcing S.D. Codified Laws § 12-27-16;

c. Award Plaintiff its costs and attorneys' fees under 42 U.S.C. § 1988; and

d. Award Plaintiff any further relief that the Court deems just and equitable.

Dated: June 5, 2023

Respectfully Submitted,

By: /s/ Jacob Huebert

Jacob Huebert
(Pro Hac Vice To Be Filed)
Noelle Daniel
(Pro Hac Vice To Be Filed)
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Telephone (312) 263-7668
jhuebert@libertyjusticecenter.org
ndaniel@libertyjusticecenter.org

/s/ Aaron P. Pilcher

Aaron Pilcher
Pilcher Law Firm, Prof. L.L.C.
79 Third Ave. SE
Huron, South Dakota 57350
Telephone: (605)554-1661
aaronpilcherlaw@gmail.com

*Attorneys for Plaintiff Students for Life Action*

# JS 44 CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Students for Life Action, Inc.

### DEFENDANTS
See Attachment

**(b)** County of Residence of First Listed Plaintiff: Fairfax County, VA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See Attachment

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 196 Franchise | 362 Personal Injury - Medical Malpractice | | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | 950 Constitutionality of State Statutes |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
U.S. Constitution, Amends I; 42 U.S.C. Sec. 1983

Brief description of cause:
Constitutional Challenge to S.D. Codified Law Sec. 12-27-16

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** See Attachment

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 6-5-2023
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET

### STUDENTS FOR LIFE ACTION

V.

### MARTY JACKLEY, in his official capacity as Attorney General of the State of South Dakota, and MONAE JOHNSON, in her official capacity as South Dakota Secretary of State,

1. Attorneys for Plaintiff

Jacob Huebert (Pro Hac Vice to be Filed)
Noelle Daniel (Pro Hac Vice to be Filed)
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Telephone (312) 263-7678

Aaron P. Pilcher
Pilcher Law Firm, Prof. L.L.C.
79 3rd St. SE
Huron, South Dakota 57350
Telephone (605) 554-1661

2. Defendants

Office of Attorney General of South Dakota, Marty Jackley, in his official capacity as Attorney General of the State of South Dakota; Hughes County, South Dakota; and

Office of the Secretary of State of South Dakota, Monae Johnson, in her official capacity as South Dakota Secretary of State; Hughes County, South Dakota.

Defendant's Attorneys Unknown

3. Demand

Declaratory Judgment
Injunctive Relief
Costs and Attorneys Fees