UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| STUDENTS FOR LIFE ACTION, | 3:23-CV-03010-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |
| MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; AND MONAE JOHNSON, IN HER OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE; | |
| Defendants. | |

Plaintiff Students for Life Action ("SFLA") brought this suit against Marty Jackley, in his official capacity as Attorney General of the State of South Dakota, and Monae Johnson, in her official capacity as South Dakota Secretary of State (collectively, "Defendants"). SFLA alleges South Dakota's statute requiring on-ad donor disclaimers and disclosure statements for certain political advocacy speech violates the First and Fourteenth Amendments. See generally Doc. 24. Defendants moved to dismiss, arguing that SFLA lacks standing and that the statute is constitutional. Doc. 22. Advancing American Freedom, Inc., filed an amicus brief in the matter. Doc. 30. This Court conducted a hearing and now grants in part Defendants' Motion to Dismiss.

## I.    Facts

SFLA is a 501(c)(4) nonprofit based in Fredericksburg, Virginia, that engages in national pro-life activism. Doc. 24 ¶¶ 10, 17. On June 6, 2022, SFLA sent various text messages intended "to inform voters about 12 incumbent legislators' voting records on banning chemical abortions and about their responses to candidate surveys" but that did not directly tell "the recipients who

1

they should or should not vote for." Id. ¶¶ 18–20.  These text messages were sent the day before

the party primary election and cost $116.62 each.  Id. ¶ 18.

The June 6, 2022 text messages, attached by SFLA to the First Amended Complaint, took

various forms.  For example, for those candidates who had voted against House Bill 1208 to make

it a felony offense to "dispense, distribute, manufacture, sell or transfer any chemical abortion

drug," defined as "mifegyn, mifeprex, mifepristone, and any other pharmaceutically equivalent

drug,"[1] the text read that the candidate

> voted against Students for Life Action's HB 1208 to Ban Chemical Abortions in S. Dakota,
> and failed to return his SFLAction candidate survey pledging to vote pro-life.  Please take
> 5 seconds to tell him to reverse course if nominated in the June 7th primary by signing our
> petition to ban chemical abortion

with a link attached.  Doc. 24-1 at 2–4.  For its favored candidates, SFLA's test message template

was either

> I have great news!  [Candidate name] returned our survey and pledged to vote 100% pro-
> life if elected.  [He/She] is the only candidate in House District [number] to do so.  Please
> take 5 seconds to encourage [him/her] to keep [his/her] promise if nominated in the June
> 7th primary by signing our petition to ban chemical abortion

with a link attached, id. at 5–7, or

> I have great news!  [Candidate name] returned our survey and pledged to vote 100% pro-
> life if elected.  Please thank [candidate name] for pledging to defend the preborn and
> encourage [him/her] to keep [his/her] promise to defend life if nominated in the Tuesday,
> June 7th Republican Primary.

Id. at 8.  The texts did not contain any on-ad disclaimer, and SFLA filed no disclosure statement

under SDCL Chapter 12-27.  Defendants took no enforcement action of any nature against SFLA

as a consequence of the text messages.  SFLA intends to continue sending similar messages in the

future.  Doc. 24 ¶ 22.

---

[1] The text of the 2022 House Bill 1208 is at https://sdlegislature.gov/session/bill/23057/230675.

SFLA also sent out mailers to South Dakota voters during 2022.[2]  Id. ¶ 21.  The mailers targeted certain South Dakota House of Representative members who had voted "no" on House Bill 1208 and provided their phone numbers before concluding with encouragement to call the representative to tell him or her "to stop opposing pro-life legislation," or, in some iterations, "pro-life bills."  Doc. 24-2 at 2–9.  At least some of these mailings listed the mailing and website address of SFLA and stated, "Paid for by [SFLA], not by any candidate or candidate's committee."  Id.  The mailers did not otherwise contain any on-ad disclaimer and SFLA filed no disclosure statement under SDCL Chapter 12-27.  SFLA faced no enforcement action from Defendants or anyone else stemming from the mailings and intends to engage in similar messaging in the future.  Doc. 24 ¶ 22.

In 2023, SFLA filed a Complaint, Doc. 1, which it subsequently amended, Doc. 24, alleging that SDCL § 12-27-16 requiring on-ad donor disclaimers and disclosure statements for certain advocacy-related communications violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment.  Doc. 24 ¶¶ 55–93.  The on-ad donor disclaimer requirement mandates that certain communications costing over $100 identify who is "making the independent communication expenditure for that communication," include a mailing and website address for the person or entity making the expenditure, and list the entity's top five contributors from the prior twelve-month period before the communication.  SDCL § 12-27-16(1)(a)–(c).  The disclaimer must also state the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee."  Id. § 12-27-16(1)(c).  The disclosure statement requirement mandates those making expenditures subject to the disclaimer requirement "file an independent communication

---

[2] The timing of these mailers in connection to any primary or election is unclear in the record.

expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published" with the South Dakota Secretary of State. Id. § 12-27-16(2). SFLA had not complied with these statutes when making their 2022 communications.

SFLA challenges both the disclaimer and disclosure statement requirements. It argues that SDCL § 12-27-16 is facially overbroad in applying to SFLA's issue advocacy, Doc. 24 ¶¶ 56–62, the on-ad disclaimer requirement is a content-based rule that does not pass constitutional muster on its face or as applied to SFLA, id. ¶¶ 65–80, and the on-ad disclaimer requirement is facially void for vagueness, id. ¶¶ 82–92. SFLA seeks a declaratory judgment that SDCL §§ 12-27-16 and 12-27-1(11) are unconstitutional, an injunction prohibiting Defendants from enforcing SDCL § 12-27-16, and attorney's fees and costs. Doc. 24 ¶¶ a–f. Defendants argue that SFLA lacks standing to bring the action, Doc. 23 at 16–23, and that, even if standing existed, the statute is constitutional, id. at 23–36. On these grounds, Defendants moved to dismiss. Doc. 22.

## II.    Rule 12(b)(6) Standard

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's well-pleaded factual allegations as true and make factual inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).   Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard.  Iqbal, 556 U.S. at 678 (cleaned up and citation omitted).

## III.   Analysis

### A. Standing Question

### 1. Requirements for Standing

Defendants seek dismissal, arguing SFLA lacks standing to challenge SDCL § 12-27-16. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Murthy v. Missouri, 144 S. Ct. 1972, 1985 (2024); see also Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013).  Federal courts do not "operate as an open forum for citizens 'to press general complaints about the way in which government goes about its business.'" FDA v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Allen v. Wright, 468 U.S. 737, 760 (1984)).   Courts implement this limit through different justiciability doctrines, including standing and ripeness.   DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).   Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit.  Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968).  The three requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged law, and (3) a likelihood that a favorable decision will redress the injury.  All. for Hippocratic Med., 602 U.S. at 380; Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381. A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List, 573 U.S. at 158 (cleaned up and citation omitted). A plaintiff bringing a First Amendment challenge can meet the injury-in-fact requirement by showing there is "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Animal Legal Def. Fund v. Reynolds, 89 F.4th 1071, 1077 (8th Cir. 2024) (citation omitted); see also Iowa Right to Life Comm., Inc. v. Tooker, 717 F.3d 576, 604 (8th Cir. 2013) (finding standing when "plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute" even when there is no "specific threat of enforcement" (citation omitted)).

The Supreme Court of the United States has recognized that the "second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" All. for Hippocratic Med., 602 U.S. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." Id. at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." Id. at 383. For causation, "the plaintiff must show a predictable chain of events leading from the

government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." Id. at 385. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." Id. at 382. Where the defendant's action caused injury, redressability—the third element of standing—typically exists through injunctive action or an award of damages. Id. at 381.

A plaintiff bears the burden of establishing standing as of the time the lawsuit was brought and throughout the pendency of the case. See Carney v. Adams, 592 U.S. 53, 59 (2020). "[S]tanding is not dispensed in gross," TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021), but requires a plaintiff to "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek," Murthy, 144 S. Ct. at 1988 (cleaned up and citation omitted). SFLA faced no enforcement action for its activities and seeks forward-looking relief; SFLA thus must allege that it faces "a real and immediate threat of repeated injury" to avoid dismissal and show the same to justify relief. Murthy, 144 S. Ct. at 1986 (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)); see also Murthy, 144 S. Ct. at 1993.

Defendants argue SFLA has failed to demonstrate it suffered an injury in fact for three reasons. First, at the hearing, Defendants suggest the challenged statute, SDCL § 12-27-16, does not apply to SFLA's issue advocacy and only applies to express advocacy. Second, Defendants argue in their briefs that SFLA's injury is too speculative and hypothetical to confer standing. Doc. 23 at 16–20. Third, Defendants assert SFLA lacks standing to allege a facial overbreadth challenge. Doc. 23 at 20–23. Because standing is jurisdictional, this Court must evaluate standing generally, not confined to just those standing arguments a defendant makes. See Young America's

Foundation v. Kaler, 14 F.4th 879, 887 (8th Cir. 2021) (requiring the court raise the "threshold issue" of standing "sua sponte if need be" (cleaned up and citations omitted)).

### 2. Whether SFLA's Conduct Is Arguably Subject to SDCL § 12-27-16

### a. Application of SDCL § 12-27-16 to SFLA's Advocacy Activities

Defendants argue that SDCL § 12-27-16 does not govern issue advocacy but only applies to express advocacy.[3] Defendants note that SFLA's communications, by their own admissions, do not constitute express advocacy and are merely issue advocacy, and Defendants then assert that SDCL § 12-27-16 does not restrict issue advocacy. See Doc. 24 ¶¶ 4–5, 22, 61–62 (referring to SFLA's conduct as "issue advocacy"). Therefore, Defendants argue SFLA lacks standing because its advocacy work is not governed by the statute at all and does not subject SFLA to a potential enforcement action or civil or criminal penalties. See Animal Legal Def. Fund, 89 F.4th at 1077 (requiring plaintiff show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution

---

[3] This position, which Defendants first articulated at the hearing and which this Court addresses as a matter of ensuring its subject matter jurisdiction, reflected a shift from Defendants' position in briefing. SFLA in Count I alleges that the statute is overbroad by applying to both express and issue advocacy. Instead of arguing that the statute only applies to express advocacy, as they submitted at the hearing, Defendants' brief noted that "the distinction between issue advocacy and express advocacy plays no role in determining if a disclosure law is unconstitutional." Doc. 23 at 23. At the hearing, however, Defendants emphasized the distinction, arguing that South Dakota statutes distinguish one from the other and SFLA lacks standing to challenge express advocacy constraints as it only engages in issue advocacy. This Court agrees that the constitutionality of a disclosure statute does not hinge upon whether it applies to express or issue advocacy. See Gaspee Project v. Mederos, 13 F.4th 79, 86 (1st Cir. 2021) ("In the election context, the Supreme Court has rejected the attempt to distinguish between express advocacy and issue advocacy when evaluating disclosure laws . . . ." (citing Citizens United v. FEC, 558 U.S. 310, 368–69 (2010))). But SFLA would lack standing to bring suit if the South Dakota statute distinguishes between the two forms of advocacy and does not apply to SFLA's conduct. Thus, whether the statute makes that distinction matters to the standing analysis.

thereunder" (citation omitted)).  This argument is unavailing because the statute is not confined to just express advocacy, leaving SFLA's issue advocacy not clearly outside of the statutes at issue.

South Dakota Codified Law § 12-27-1(9), defines the phrase "expressly advocate" to mean communications that advocate for a particular election result by "using explicit words of advocacy" like "vote, re-elect, support, cast your ballot for, reject, and defeat."  SDCL § 12-27-1(9)(a).  SFLA's advocacy did not use any of those terms.  A communication is also express advocacy under South Dakota statute if the communication is one that,

> If taken as a whole and with limited reference to external events, such as the proximity to the election, may only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question because:
> (i)    The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
> (ii)   Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question or encourages some other kind of action[.]

§ 12-27-1(9)(b).

SFLA's mailings are not express advocacy because they encourage recipients to contact the office holder to lobby them to act more pro-life and do not encourage a particular vote or even mention the upcoming primary.  Doc. 24-2 at 2–9.  By contrast, SFLA's text messages sent the day before the 2022 primary skirt close to express advocacy under this definition.  The text messages clearly identified candidates running in the June primary, referring to them by name. Doc. 24-1 at 2–8; see also SDCL § 12-27-1(5) (defining "clearly identified" as "the appearance of the name, nickname, a photograph or a drawing of a candidate or public office holder, or the unambiguous reference to the identity of a candidate or public office holder").  The text messages were sent the day before the June 7 primary elections and mention the June 7 primary.  Still, the

text messages focus on the candidate's prior vote on HB 1208 or if the candidate satisfied SFLA's 100% pro-life pledge.  Doc. 24-1 at 2–8.  The text messages requested the recipients of the texts sign a petition "encouraging" or discouraging the candidate from pursuing a particular course of action "if nominated" in the primary.  Id.  The text messages did not tell voters to vote for or reject these candidates based on their stance on pro-life issues using "explicit words of advocacy" under § 12-27-1(9)(a).  Given the timing of the text messages occurring the day before the primary, SFLA may have had a none-too-subtle secondary purpose to urge voters to vote in the June 7 primary for the SFLA-preferred 100% pro-life candidate.  Setting aside the timing of the messages (which the statutory definition contemplates by requiring "limited reference to external events") and literally applying the definition of SDCL § 12-27-9, the text messages could be read as limited to what they specifically instruct: having the recipients sign a pro-life petition or reach out to and encourage or discourage certain behavior from the candidate.  At least arguably, SFLA's messages did not constitute express advocacy as defined under § 12-27-1(9)(b) and reasonable minds could differ, such that SFLA's messages would be outside the literal scope of the statutory definition of express advocacy.  Under SDCL § 12-27-1(9), SFLA's messaging does not qualify as express advocacy under South Dakota law.

But even though SFLA may not participate in express advocacy and only engages in issue advocacy, Defendants are incorrect that SDCL § 12-27-16 thereby cannot apply to SFLA.  South Dakota Codified Law § 12-27-16 makes no distinction between the two types of advocacy for purposes of the disclaimer and disclosure requirements; it applies equally to both.  South Dakota Codified Law § 12-27-16, in relevant part, states:

> The following apply to independent communication expenditures by persons and entities related to communications concerning candidates, public office holders, ballot questions, or political parties who are not controlled by, coordinated with,

requested by, or made upon consultation with that candidate, political committee, or agent of a candidate or political committee:

    (1)    Any person or entity that makes a payment or promise of payment totaling more than one hundred dollars, including donated goods or services for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party shall append to or include in each communication a disclaimer that clearly and forthrightly:

        (a)    Identifies the person or entity making the independent communication expenditure for that communication;

        (b)    States the mailing address and website address, if applicable, of the person or entity; and

        (c)    If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication. An independent communication expenditure made by a person or entity shall include the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee.".

A violation of this subdivision is a Class 2 misdemeanor. A subsequent offense within a calendar year is a Class 1 misdemeanor;

    (2)    Any person or entity making a payment or promise of payment of more than one hundred dollars, including donated goods and services, for a communication described in subdivision (1) shall file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published.

SDCL § 12-27-16. Both Class 1 and 2 misdemeanors expose a violator to jail time or a fine, SDCL § 22-6-2, and the South Dakota Secretary of State is charged with enforcing civil penalties against violations of SDCL § 12-27-16, SDCL § 12-27-29.2.

The statute itself belies Defendants' argument that SDCL § 12-27-16 distinguishes between express advocacy and issue advocacy. The portions of SDCL § 12-27-16 requiring on-ad disclaimers and disclosure statements do not mention express advocacy at all, let alone distinguish between types of advocacy or limit the statute's application only to those communications that "expressly advocate" for a candidate or ballot issue. In fact, SDCL Chapter 12-27 only mentions express advocacy twice: it defines "expressly advocate" in § 12-27-1(9), and then uses the term

11

only once more to exclude certain polling activities from the definition of "communication." SDCL § 12-27-16(6)(e) (stating that a "communication" does not include "[a]ny communication used for the purpose of polling if the poll question does not expressly advocate for or against a candidate, public office holder, ballot question, or political party"). Thus, SDCL § 12-27-16 cannot be read to exclude all issue advocacy from the scope of the statute's on-ad disclaimer and disclosure statement provisions.[4]

South Dakota Codified Law § 12-27-16 applies disclaimer and disclosure requirements on "independent communication expenditures." The messages SFLA sent are "independent communication expenditures" subject to SDCL § 12-27-16 because they were sent independent of a candidate's campaign, cost over $100, and were "concerning candidates" by discussing their voting record on HB 1208 or whether they returned material SFLA took to be a pledge to vote 100% pro-life. Doc 24 ¶ 18.

Defendants raised another argument why the disclosure under SDCL § 12-27-16(1)(c) does not apply to issue advocacy, namely that a "contribution" as defined in SDCL § 12-27-1(6) does not exist for SFLA to disclose and thus SFLA lacks standing to challenge at least that portion of the on-ad disclaimer. To be a "contribution" under SDCL § 12-27-1(6), the consideration must be made for the purpose of influencing:

(a) The nomination, election, or re-election of any person to public office; or
(b) The placement of a ballot question on the ballot or the adoption or defeat of any ballot question submitted.

---

[4] This marks the second case where these Defendants advanced a legal argument based on a misreading of portions of SDCL § 12-27-6. See Inst. for Free Speech v. Jackley, 340 F. Supp. 3d 853, 859 (D.S.D. 2018) (addressing arguments centering on misinterpretation by Attorney General and Secretary of State of SDCL § 12-27-16(b)(a)). If Defendants believe the statute should be applied differently than how it is written, then they should seek amendment through the state legislature to refine the language to be what Defendants evidently believe makes sense.

SDCL § 12-27-1(6). Defendants are correct that these subsections describe express advocacy, which SFLA disavows doing in South Dakota. This argument against standing may have merit but requires evaluating "the purpose" of the contributions to SFLA. Determining the "purpose" of the contribution cannot be readily done in ruling on a motion to dismiss and is better done on cross motions for summary judgment after Defendants conduct discovery from SFLA. And this standing question affects only SFLA's as-applied challenge to SDCL § 12-27-16 and not necessarily its facial challenge to the statute.

**b. Whether Defendants' Intent to Not Enforce the Statute Against SFLA Defeats Standing**

Defendants argued at the motion hearing that they have not and would not pursue any enforcement action against SFLA because Defendants did not believe SFLA's conduct to be subject to the statute. The absence of any enforcement action against SFLA, especially in light of the two recent Supreme Court standing decisions in Murthy and Alliance for Hippocratic Medicine this term, casts some doubt on SFLA's assertion of standing. After all, Alliance for Hippocratic Medicine underscored that an injury in fact "must be real and not abstract," "must affect the plaintiff in a personal and individual way," "must be actual or imminent, not speculative," and "must have already occurred or be likely to occur soon." All. for Hippocratic Med., 602 U.S. at 381 (cleaned up and citations omitted). And Murthy added that, for forward-looking relief such as what SFLA seeks, plaintiffs must show that they "face 'a real and immediate threat of repeated injury.'" Murthy, 144 S. Ct. at 1986 (quoting O'Shea, 414 U.S. at 496). A plaintiff must show standing "with the manner and degree of evidence required at the successive stages of the litigation," Lujan, 504 U.S. at 561, and here SFLA is defending against a motion to dismiss. Much

of SFLA's Amended Complaint is devoted to alleging fear of enforcement and potential chilling effect on its donor base surrounding an on-ad, top-five-contributors disclosure. Doc. 24 ¶¶ 24–54.

This Court previously encountered a similar situation involving a different constitutional challenge to this same statute. In <u>Institute for Free Speech v. Jackley</u>, 340 F. Supp. 3d 853 (D.S.D. 2018) ("<u>IFS I</u>"), an organization wanted to publish its analysis and critiques of two South Dakota ballot measures but sued out of concern that doing so would be an "independent communication expenditure" under SDCL § 12-27-16. <u>IFS I</u>, 340 F. Supp. 3d at 855. The Defendants—as here, the South Dakota Attorney General and Secretary of State—opposed granting plaintiff relief and expressed no intent to enforce the statute. Concluding that Defendants had misinterpreted a part of the statute not at issue here—SDCL § 12-27-16(6)(a)—and that plaintiff's planned activity was not completely outside the statute, this Court preliminarily determined that the plaintiff had standing sufficient to seek and obtain a preliminary injunction. <u>IFS I</u>, 340 F. Supp. 3d at 859–62. Plaintiff then published its material, which went beyond what it had represented its intention to be. <u>Inst. for Free Speech v. Ravnsborg</u>, 416 F. Supp. 3d 894, 897 (D.S.D. 2019) ("<u>IFS II</u>"). The preliminary injunction remained in force for eleven months; Defendants represented that it would not enforce the statute against plaintiff but filed a motion for summary judgment some eleven months after plaintiff's publication of its material. <u>IFS II</u>, 416 F. Supp. 3d at 897–98. This Court concluded that plaintiff faced no credible threat of prosecution with the injunction in place and with Defendants' repeated professions of no intent to prosecute plaintiff. <u>See generally id.</u> After Defendants agreed that the preliminary injunction could become a permanent injunction, this Court entered summary judgment based on the absence of any injury in fact necessary for standing.

SFLA's case differs from <u>IFS I</u> and <u>IFS II</u>, with facts that essentially land between the two decisions. Unlike the situation in <u>IFS I</u>, SFLA has published its material in the form of text

14

messages and mailings, with Defendants taking no enforcement action.  Doc. 24 ¶¶ 18–21; IFS I, 340 F. Supp. 3d at 855.  But unlike the situation in IFS II, Defendants merely argue they will not prosecute and have taken no formal position—let alone signed a stipulation for a permanent injunction against prosecution.  See Doc. 24 ¶¶ 32–37; IFS II, 416 F. Supp. 3d at 897.  Defendants' profession of no interest in applying SDCL Chapter 12-27 to SFLA's advocacy is, at this stage on a motion to dismiss, simply an argument.

SFLA's standing situation also falls in between Eighth Circuit cases where the court found no standing because a campaign finance statute did not apply to plaintiffs' advocacy and thus did not create a credible threat of prosecution, see Iowa Right to Life, 717 F.3d at 584–87, and where the court has applied "a more lenient standing requirement to pre-enforcement challenges" where the alleged injury "is a chill on constitutionally protected speech," Animal Legal Def. Fund, 89 F.4th at 1077 (cleaned up and citation omitted).  The Eighth Circuit has recently faced this same situation where the plaintiffs claim that their First Amendment rights are chilled by the threat of enforcement of allegedly unconstitutional laws and the defendants respond that they have not enforced or threatened to enforce the statute against the plaintiffs.  See Minn. RFL Republican Farmer Lab. Caucus v. Freeman, 33 F.4th 985 (8th Cir. 2022) ("Minnesota RFL I"); Minn. RFL Republican Farmer Lab. v. Moriarty, No. 23-1563, 2024 U.S. App. LEXIS 17743 (8th Cir. July 19, 2024) ("Minnesota RFL II").  Neither the Eighth Circuit nor the district court dismissed these cases based on an absence of standing.  Rather, the courts reasoned that suit against prosecutors who are declining to prosecute was no exception to Eleventh Amendment immunity under Ex parte Young, 209 U.S. 123 (1908), thereby justifying the denial of preliminary injunctive relief in Minnesota RFL I and the grant of summary judgment for the defendants in Minnesota RFL II. Minnesota RFL I, 33 F.4th at 992; Minnesota RFL II, 2024 U.S. App. LEXIS 17743; see also 281

Care Comm. v. Arneson, 766 F.3d 774, 797 (8th Cir. 2014). In short, the Eighth Circuit has found a different way—other than a standing analysis—to dispose of pre-enforcement First Amendment violation claims where the defendants formally disavowed any intention of enforcing the law against the plaintiffs. Here, it is premature to consider such an issue on a motion to dismiss, and Defendants in this case have not provided the same no-prosecution assurances by testimony or affidavit as existed in Minnesota RFL I and Minnesota RFL II.

A good explanation of why granting a motion to dismiss SFLA's claims for lack of standing is problematic appears in Vermont Right to Life Comm. v. Sorrell, 221 F.3d 376 (2d Cir. 2000), where the Second Circuit rejected the same standing argument that the Defendants make here. In Vermont Right to Life Committee, the Second Circuit reasoned that, while the state may not have had any intention of suing the plaintiff for its activities,

> there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation. See Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999) (doctrine of "judicial estoppel" which prevents party from taking mutually exclusive positions in different litigation under some circumstances applies to assertions of factual positions); Vittitow v. City of Upper Arlington, 43 F.3d 1100, 1106 (6th Cir. [1995]) (there is no rule "that requires us to accept representations from [the prosecution's] counsel" (emphasis omitted)), cert. denied, 515 U.S. 1121, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995); Kucharek v. Hanaway, 902 F.2d 513, 519 (7th Cir.1990) (interpretation of statute offered by Attorney General is not binding because he may "change his mind . . . and he may be replaced in office"). But cf. Wisconsin Right to Life, Inc. v. Paradise, 138 F.3d 1183, 1185 (7th Cir. [1998]) (finding no well-founded fear to support standing where present state attorney general, and every past attorney general since 1976, had adhered to same interpretation of statute), cert. denied, 525 U.S. 873, 119 S.Ct. 172, 142 L.Ed.2d 140 (1998). In light of this uncertainty, the State's representation cannot remove VRLC's reasonable fear that it will be subjected to penalties for its planned expressive activities. If we held otherwise, we would be placing VRLC's asserted First Amendment rights "at the sufferance of" Vermont's Attorney General. North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 711 (4th Cir. 1999), cert. denied, 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000); see also Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 2614-15, 147 L.Ed.2d 743 (2000). American Booksellers, 484 U.S. at 395, 108 S.Ct. 636 (1988) ("[A]s the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); North Carolina Right to Life, Inc., 168 F.3d at 710 (declining in absence of agency rule to rely on "State's litigation position"

that it does not interpret statute to apply to issue advocacy). But cf. Graham v. Butterworth, 5 F.3d 496, 499 (11th Cir. 1993) (dismissing First Amendment challenge to state statute as moot after defendants withdrew initial determination that plaintiffs' conduct violated statute and informed plaintiffs that their intended campaign conduct would not be prosecuted).

Vermont Right to Life Comm., 221 F.3d at 383–84. Here, on a motion to dismiss, the Defendants' mere argument that they do not intend to take enforcement action against SFLA is not sufficient to deprive SFLA of the standing it alleges in its Amended Complaint, although the standing or Eleventh Amendment immunity analysis may be different depending on how the litigation proceeds.

### 3. Whether SFLA Has Alleged an Injury in Fact

Defendants' next standing argument is that SFLA's allegations regarding its "intended" future conduct is not sufficiently certain to occur and demonstrates its speech has not been chilled. Doc. 23 at 16–19. SFLA counters that it has alleged an injury in fact related to its own prior and future conduct, Doc. 24 ¶ 38, and with regard to the statute's chilling effect on its donors, id. ¶ 40.

First, Defendants argue that SFLA lacks standing because it "does not state it 'will' engage in issue advocacy, only that they 'intend' to engage in issue advocacy within the next two years." Doc. 23 at 17. Defendants argue that such an intention is too speculative to confer standing. Id. In the First Amendment context, an injury may be too hypothetical or speculative to confer standing if the occurrence of proposed future conduct is uncertain. See Final Exit Network, Inc. v. Ellison, 370 F. Supp. 3d 995, 1010 (D. Minn. 2019) ("'Some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.'" (cleaned up) (quoting Lujan, 504 U.S. at 564)); Missouri Roundtable for Life v. Carnahan, 676 F.3d 665, 672 (8th Cir. 2012) ("A party cannot show an injury in fact by mere allegations of possible future

injury." (internal quotations and citation omitted)).   However, all prospective relief is not automatically too speculative, and the Eighth Circuit recognizes that

> There are two types of injuries conferring standing for prospective First Amendment relief. The first occurs when a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.   The second occurs when a plaintiff self-censors.

Dakotans For Health v. Noem, 52 F.4th 381, 386 (8th Cir. 2022) (cleaned up and citations omitted).

Here, SFLA has alleged that it "has engaged in advocacy about issues and office holders in South Dakota in the past and intends to do so again," Doc. 24 ¶ 4, that "[i]n the next two years, [SFLA] intends to continue to communicate with the public in South Dakota through issue advocacy about candidates and public office holders," id. ¶ 22, and that such "intended communications will exceed $100 in value," id.   Therefore, SFLA has alleged facts supporting standing; it has "allege[d] an intention to engage in" statutorily proscribed conduct that affects its First Amendment rights and for which it may be prosecuted.   See Dakotans For Health, 52 F.4th at 386 (identifying injuries that "confer[] standing for prospective First Amendment relief"); SDCL § 12-27-16 (noting a violation is a misdemeanor); SDCL § 12-27-29.2 (charging the South Dakota Secretary of State with enforcing civil penalties for violations of SDCL § 12-27-16).

Next, Defendants assert that SFLA's statement that they "intend" to engage in future advocacy means that SFLA lacks standing because the statute does not, in fact, chill SFLA's conduct.   Defendants argue that SFLA "has not alleged they would engage in issue advocacy 'but for' S.D. Codified Law § 12-27-16 and does not allege self-censorship.   Rather, Plaintiff has affirmed it intends to speak, despite SDCL § 12-27-16." Doc. 23 at 19–20.   Defendants further argue that, because of its intent to continue with its advocacy, "Plaintiff has not alleged in its

Complaint that its speech is chilled.  Plaintiff only alleges their donor's speech is chilled." Id. at 20.

Generally, to allege standing to challenge a statute's chilling effect on speech, plaintiffs must allege that they would speak but for the law whose constitutionality they are challenging. See Dakotans For Health, 52 F.4th at 386 (recognizing self-censorship as a basis for prospective First Amendment relief); Animal Legal Defense Fund, 8 F.4th at 718 (finding standing where "plaintiffs allege that, but for the statute, the lead organizations" would engage in the statutorily-proscribed First Amendment conduct).  In donor disclaimer and disclosure actions, an organization may show standing by alleging a disclosure regime has a chilling effect on the organization's donors, thereby violating the donors' First Amendment association rights.  See Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 616 (2021) (recognizing that "disclosure requirements can chill association" and allowing the organization to challenge a disclosure statute that risked chilling the First Amendment activity of the organization's donors).

SFLA has not alleged that it will stop engaging in its advocacy because of the statute and, therefore, has not alleged that its own speech is chilled.  See Dakotans For Health, 52 F.4th at 386 (noting "[s]elf-censoring occurs when a plaintiff alleges it would like to engage in arguably protected speech, but that it is chilled from doing so by the existence of the statute" (cleaned up and citation omitted)).  After all, the statute did not prompt SFLA to place the required disclaimers on its ads that ran before the 2022 primary or to comply with disclosure requirements, and the Defendants' absence of any enforcement action and subsequent disavowal of any plan to apply the statute to SFLA would not chill SFLA from similar conduct.  However, SFLA may be able to challenge the statute's chilling effect on its donors.  See Ams. for Prosperity, 594 U.S. at 615–19 (allowing the organization to bring an action on the basis of chilled speech when the statute

discouraged the organization's donors from engaging in First Amendment activity).   SFLA has

alleged South Dakota's disclosure regime threatens chilling the association rights of its donors

because donors may fear various forms of reprisals or retaliation for its association with SFLA.

Doc. 24 ¶¶ 6, 40.   Therefore, SFLA has standing to challenge the top-five-contributors disclaimer

requirement of SDCL § 12-27-16 for chilling its donors' protected rights.   See Ams. for Prosperity,

594 U.S. at 616.

### 4.   Whether SFLA Has Standing to Challenge the Statute as Facially Overbroad

SFLA makes both an as-applied and facial challenge to SDCL § 12-27-16.   Doc. 24.

Defendants assert SFLA lacks standing to allege a facial overbreadth challenge, citing cases

upholding disclaimer and disclosure statement requirements as support for their position.   In

response, SFLA claims that, despite the general constitutionality of disclaimer and disclosure laws,

South Dakota has crafted a statute that reaches far more constitutionally-protected speech than

other state statutes upheld by federal courts.   Defendants' reply argues why, on its merits, the

statute is not overbroad; they do not address whether SFLA has standing to bring a facial

overbreadth claim.   Nonetheless, because Defendants maintain that SFLA lacks standing and

standing is necessary to exercise subject matter jurisdiction over the claim, this Court will address

the argument.

"For a federal court to entertain a facial challenge pursuant to the First Amendment

overbreadth doctrine, there must be a realistic danger that the statute itself will significantly

compromise recognized First Amendment protections of parties not before the court."   Josephine

Havlak Photographer, Inc.  v. Vill. Of Twin Oaks, 864 F.3d 905, 912 (8th Cir. 2017) (cleaned up

and citations omitted).   For purposes of standing to challenge a statute as facially overbroad, "the

party before the court must identify a significant difference between his claim that the statute is

facially invalid on overbreadth grounds, and his claim that it is unconstitutional as applied to his particular activity." Id. (citation omitted). "It is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself." Id. (citations omitted).

In the Eighth Circuit, there is little guidance about exactly what it means for plaintiffs to "identify a significant difference between" the plaintiff's claim of facial overbreadth and any as-applied challenge under Havlak, but one clear example appears in Rodgers v. Stachey, 382 F. Supp. 3d 869, 878–79 (W.D. Ark. 2019). In Rodgers, the district court found the plaintiff had standing to allege that a statute that prohibited pedestrians from speaking to drivers in the roadway was facially overbroad. The plaintiff argued that the statute proscribed not only the plaintiff's begging, but also speech from individuals "asking or answering a question about directions; or hailing a ride from a taxi, Uber driver, or bus; or anyone seeking assistance from an occupant of a vehicle in operation," among others. Rodgers, 382 F. Supp. 3d at 878–79. Relying on the multiple examples the plaintiff mentioned in his brief, the court found he had standing because he "ha[d] identified significant differences between his claim that the Ordinance is unconstitutional as applied to his particular activity of begging, and his claim that the Ordinance is facially invalid on overbreadth grounds." Id.

Other cases relying on Havlak have dismissed facial overbreadth challenges for lack of standing. Harrington v. Strong, 363 F. Supp. 3d 984, 1004 (D. Neb. 2019), is a useful example. In Harrington, the plaintiffs challenged a municipal code provision requiring the chief of police and other officials to enforce public nuisance prevention standards at establishments that sell or serve alcohol during any performance. Id. at 1004 n.17. The plaintiffs alleged that multiple parts of the statute's terms "can be applied to virtually anything the City Defendants do not like," but

they "made no attempt [in their complaint or briefing] to allege any realistic scenarios in which [the ordinance] would 'compromise recognized First Amendment protections of parties not before the court.'" Harrington, 363 F. Supp. 3d at 1004 (quoting Havlak, 864 F.3d at 912).  Absent this "realistic scenario," the court dismissed the claim for lack of standing.  Id.

Another instructive example is Final Exit Network, 370 F. Supp. 3d at 1014.  In Final Exit Network, plaintiffs, an organization dedicated to counseling on suicide and some of its volunteers, attempted to challenge Minnesota's statute criminalizing conduct and speech that "assists" another in committing suicide.  Id. at 1004–07.  The court emphasized that, "to the extent the Second Amended Complaint references third parties, it does not assert that the statute affects them differently from the Plaintiffs"; in fact, the court highlighted how the plaintiffs argued that anyone may be treated the same way as the plaintiffs, alleging that the "[organization] and its [volunteer] Exit Guides – or even a librarian or a bookstore sales clerk – may be convicted solely for informing a 'targeted' person where to find the same information himself or herself." Id. at 1014.  Therefore, because the plaintiffs did not show how they were affected differently from other third parties, the district court dismissed the facial overbreadth challenge for lack of standing.  Id. at 1014–15.

SFLA's allegations and arguments appear to fall somewhere between those presented in Rodgers and those in Harrington and Final Exit Network.  SFLA argues that SDCL § 12-27-16's lack of a temporal limitation and reference to "public office holders" allows the statute to apply "at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election." [5]  Doc. 24 ¶ 76.  SFLA argues that the scope of the statute

---

[5] Of course, "[w]hen determining whether to dismiss a complaint for lack of standing, a court is to 'construe the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff.'" Final Exit Network, 370 F. Supp. 3d at 1008 (quoting Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880 (8th Cir. 2015)); see Sch. of the Ozarks, Inc. v. Biden, 41 F.4th 992, 997 (8th Cir. 2022) ("At the pleading stage . . . a plaintiff must allege

extends to "purely informational or political speech that is . . . unrelated to an election," Doc. 35 at 17, including speech concerning "public office holders" who hold an elected or appointed position but who are not necessarily running for reelection. As the discussion of SFLA's three counts reveals, some of SFLA's claims are not as-applied challenges as they do not relate to SFLA's advocacy or anticipated advocacy. SFLA has made at least a reasonable "attempt to allege any realistic scenarios in which [§ 12-27-16] would 'compromise recognized First Amendment protections of parties not before the court.'" Harrington, 363 F. Supp. 3d at 1004 (citation omitted). Though somewhat amorphous, SFLA has "identified significant differences between [its] claim that [§ 12-27-16] is unconstitutional as applied to [its] particular activity of [issue advocacy], and [its] claim that [§ 12-27-16] is facially invalid on overbreadth grounds." Rodgers, 382 F. Supp. 3d at 878–79. Resolving standing inferences in favor of the plaintiff, see Glickert v. Loop Trolley Transp. Dev. Dist., 792 F.3d 876, 880 (8th Cir. 2015), SFLA has identified a general political speaker addressing non-election issues as a sufficient comparator. See Doc. 24 ¶ 76 (describing the scope of the statute); Doc. 35 at 17 (same).

**B. Whether SFLA Has Stated Viable Claims**

**1. Claims in Amended Complaint and Level of Scrutiny**

Having determined SFLA has standing to bring this action, this Court now turns to the portion of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Doc. 22, arguing that SFLA failed to state a claim because SDCL § 12-27-16 is constitutional. SFLA's Amended Complaint contains three counts—1) that SDCL § 12-27-16 is unconstitutional "on its face because it is overbroad," Doc. 24 ¶¶ 55–63; 2) that the on-ad donor disclosure rule is

---

sufficient facts to support a reasonable inference that it can satisfy the elements of standing." (cleaned up and citation omitted)).

unconstitutional, Doc. 24 ¶¶ 64–81; and 3) that the on-ad donor disclosure rule is void for vagueness, Doc. 24 ¶¶ 82–93.  The first count is a facial attack on the statute, although it contains within it an as-applied challenge to regulation of issue advocacy.  The second and third counts of the Amended Complaint contain both facial and as-applied challenges, with some overlap with the first count.  See Doe v. Reed, 561 U.S. 186, 194 (2010) (explaining that, in distinguishing between facial and as-applied challenges, what matters is whether the claim and relief "reach beyond the particular circumstances of" the plaintiff).

In all three counts, SFLA invokes the First and Fourteenth Amendments to claim that SDCL § 12-27-16 abridges its right to free speech.  Doc. 24.  The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  The Fourteenth Amendment extended protections of the First Amendment to the states.  Timbs v. Indiana, 586 U.S. 146, 156 (2019) (noting that "the First Amendment's Free Speech Clause was applicable to the States under the Due Process Clause of the Fourteenth Amendment" (cleaned up and citation omitted)).  "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people."  Citizens United v. FEC, 558 U.S. 310, 339 (2010).  "Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."  Buckley v. Valeo, 424 U.S. 1, 14 (1976).  Thus, laws that burden political speech are "subject to strict scrutiny," requiring the government to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest."  Citizens United, 558 U.S. at 340 (quoting FEC v. Wisc. Right to Life, Inc., 551 U.S. 449, 464 (2007)).

Both in its Amended Complaint, Doc. 24 ¶¶ 68–71, and in briefing, Doc. 35 at 15 n.1, SFLA urges that this Court apply strict scrutiny to strike down SDCL § 12-27-16 altogether.  Strict

scrutiny, however, is not the standard for evaluating disclaimer and disclosure laws such as SDCL § 12-27-16.[6]  Disclaimer and disclosure laws like SDCL § 12-27-16 "impose no ceiling on campaign-related activities, and do not prevent anyone from speaking." Citizens United, 558 U.S. at 366 (cleaned up and citations omitted).  Thus, instead of strict scrutiny, such laws are subject to "'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Id. at 366–67 (citation omitted).  The Supreme Court has recognized such an important interest includes "providing the electorate with information" about the sources of spending behind political speech. Citizens United, 558 U.S. at 367 (quoting Buckley, 424 U.S. at 66).  Because groups can finance political election-related speech "while hiding behind dubious and misleading names," disclaimers and disclosures help citizens "make informed choices in the political marketplace." Id. at 367 (cleaned up and citations omitted).  Such disclosures also deter corruption and expose large contributors and expenditures to the light of day. Buckley, 424 U.S. at 67.

### 2. Facial Overbreadth Claim in Count I

### a. Facial Challenges and Generalized Challenge to SDCL § 12-27-16

Part of Count I in SFLA's Amended Complaint contains a facial challenge to SDCL § 12-27-16 as being overbroad.  "In the First Amendment context, a law is overbroad when 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" Animal Legal Def. Fund, 89 F.4th at 1079 (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)).  Courts routinely uphold disclosure laws like the one challenged in this case when they satisfy exacting scrutiny. See Citizens United, 558 U.S. at 366–67 (applying exacting

---

[6]SFLA recognizes that exacting scrutiny is prevailing law for evaluating disclaimer and disclosure laws, Doc. 35 at 14–15, but urges a change in law to apply strict scrutiny.

scrutiny to disclaimer and disclosure requirements). Under exacting scrutiny, the state has the burden to show the restriction "employs means closely drawn [to advancing the state interest] to avoid unnecessary abridgement of First Amendment freedoms." Jones v. Jegley, 947 F.3d 1100, 1105 (8th Cir. 2020) (cleaned up and citation omitted). "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Ams. for Prosperity, 594 U.S. at 608. This means the court will "require a fit that is not necessarily perfect, but reasonable." Id. at 609 (quoting McCutcheon v. FEC, 572 U.S. 185, 218 (2014)). Government interests in "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent by the candidate," "deter[ring] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and "gathering the data necessary to detect violations of the contribution limitations" can be sufficiently important to justify disclosure requirements. Buckley, 424 U.S. at 66–67; see also Citizens United, 558 U.S. at 369 (determining the "information interest alone is sufficient to justify application of" the challenged disclaimer and disclosure requirements); Gaspee Project v. Mederos, 13 F.4th 79, 88 (1st Cir. 2021) (finding a state's "interest in an informed electorate is sufficiently important to satisfy the first imperative of exacting scrutiny").

"Facial challenges are disfavored because they often rest on speculation and raise the risk of premature interpretation of statutes on the basis of factually barebones records." Phelps-Roper v. City of Manchester, 697 F.3d 678, 685 (8th Cir. 2012) (cleaned up and citations omitted); see also Iowa Right to Life, 717 F.3d at 588. "[A]pplication of the [overbreadth] doctrine is 'strong medicine' that should be employed 'sparingly and only as a last resort.'" Neely v. McDaniel, 677 F.3d 346, 350 (8th Cir. 2012) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973)).

Typically courts "apply the 'normal rule that partial, rather than facial, invalidation is the required course.'" Iowa Right to Life, 717 F.3d at 588 (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 502–04 (1985)).

South Dakota has a sufficiently important governmental interest to justify SDCL § 12-27-16 surviving a facial challenge.  Identifying donors of an organization who make independent communication expenditures informs voters of the source of the communication and helps them to gauge any bias, motives, and validity within the messages.  See Citizens United, 558 U.S. at 371 ("[D]isclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way.  This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.").  Informing voters of the source of an election-related communication is a sufficiently important interest.  See id. 558 U.S. at 369 (explaining a government interest in an informed electorate alone justifies disclosure requirements).  Therefore, South Dakota's statute has "satisf[ied] the first imperative of exacting scrutiny." Gaspee, 13 F.4th at 88.

Because South Dakota's disclaimer and disclosure regime advances a sufficiently important government interest, the motion to dismiss on SFLA's overbreadth claim must be granted unless SFLA has shown a plausible right to relief that the statute is not narrowly tailored to the state's informational interest.  SFLA claims the statute "is not narrowly tailored because it applies at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election." Doc. 24 ¶ 76.  SFLA specifically asserts that the statute is not narrowly tailored because of its absence of temporal limitations, low spending thresholds, disclosure statement requirements, and provisions regarding public office holders and issue advocacy.  However, on a facial challenge, a court is not called upon to critique each provision

and determine whether it is constitutional in every conceivable application.  See Ams. for Prosperity, 594 U.S. at 615 (stating a law "may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep").  Rather, "[g]enerally speaking, facial challenges leave no room for particularized considerations and must fail as long as the challenged regulation has any legitimate application." Gaspee Project, 13 F.4th at 92 (citing Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008)); see also United States v. Salerno, 481 U.S. 739, 745 (1987) (explaining that, to successfully mount a facial constitutional challenge, a movant "must establish that no set of circumstances exists under which [an act] would be valid").[7]  Viewed in this light, SDCL § 12-27-16 survives the overbreadth claim.

At its core, SDCL § 12-27-16 applies to election-related speech.  The statute requires disclosure statements and on-ad disclaimers for expenditures for "independent communications," which refers to speech "concerning a candidate or a ballot question."  SDCL § 12-27-1(11).  A "candidate" is

> any person *who seeks nomination for or election to public office*.  A person is a candidate if the person raises, collects, or disburses contributions in excess of five hundred dollars; has authorized the solicitation of contributions or the making of expenditures; has been certified as a candidate by a political party; has created a candidate campaign committee for the purpose of obtaining public office; or has taken all actions required by state law to qualify for nomination for election to public office.

---

[7]The Supreme Court of the United States has recognized a second way for a facial challenge under the First Amendment to an overbroad law, which requires showing that a substantial number of the law's applications are unconstitutional when "judged in relation to the statute's plainly legitimate sweep."  Ams. for Prosperity, 594 U.S. at 615 (citation omitted).  This standard still does not impel a court to critique each provision of the law, and the result ultimately is the same under either standard.

SDCL § 12-27-1(4) (emphasis added). A "ballot question" is "any referendum, initiative, proposed constitutional amendment, or other measure *submitted to voters at any election.*" SDCL § 12-27-1(1) (emphasis added). Based on these statutory definitions, to the extent the challenged statute applies to communications that "concern[] a candidate or a ballot question," SDCL § 12-27-1(11), the regulated speech is certainly election-related because candidates and ballot questions are defined by their relationship to an election. The candidate-or-ballot-question prerequisite to the statute's application explicitly ties the disclaimer and disclosure statement requirements to election-related communications, as opposed to general political speech. Therefore, the statute's application to communications "concerning a candidate or a ballot question" is sufficiently narrowly tailored to survive a facial overbreadth challenge and "tethers [§ 12-27-16's] disclosure requirements to [South Dakota]'s informational interest" in informing voters about the source of election-related communications. See Gaspee Project, 13 F.4th at 88. The connection to election-related speech narrowly tailors the statute's primary application toward achieving the state's sufficiently important interest in creating an informed electorate.

### b. Addressing Particularized Challenges to SDCL § 12-27-16's Breadth

As part of Count I, SFLA makes particularized arguments for why SDCL § 12-27-16 is unconstitutional, but such particularized challenges are better suited for as-applied and not facial overbreadth claims. Gaspee Project, 13 F.4th at 92 ("Generally speaking, facial challenges leave no room for particularized considerations and must fail as long as the challenged regulation has any legitimate application." (citations omitted)). After all, on facial overbreadth claims, a court simply determines "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Ams. for Prosperity, 594 U.S. at 615. Nonetheless, this Court turns to the overbreadth challenges raised by SFLA. SFLA argues that

SDCL § 12-27-16 is too broad in applying to speech concerning public office holders and to issue advocacy and that its temporal scope, spending thresholds, and disclosure statement requirements make the statute overbroad.

SFLA in part of Count I challenges the statute's temporal scope as not narrowly tailored because it supposedly applies to election-related speech "at all times" and not "close in time to an election." Doc. 24 ¶ 76. SFLA's argument overstates the breadth of the statute. The challenged statute only applies to communications that "concern[] a candidate or a ballot question." § 12-27-1(11). For a communication to meet the definition of a "ballot question" or "candidate," the communication would need to be made within a finite window of time before an election. Under South Dakota law, for any initiated amendment or measure petition "to qualify for submission to the voters at the next general election," the petition must undergo circulation and garner signatures, which "may [not] be obtained more than twenty-four months preceding the general election"; the signatures are due by six months before the election on "the first Tuesday in May of a general election year."[8] SDCL §§ 2-1-1.1, 2-1-1.2. Therefore, an issue cannot "qualify for submission to voters" even under the widest notion before two years prior to an election and, more realistically, will not qualify until closer to six months before an election. See SDCL §§ 2-1-1.1, 2-1-1.2. Therefore, there can be no "ballot question"—or an issue "submitted to voters at any election" under SDCL § 12-27-1(1)—before that time period, either.

An individual must submit his or her mandatory nominating petition "by the last Tuesday of March . . . before the date of the primary election" but cannot begin circulating the mandatory nominating petition or certificate until January 1 of the year of the election, meaning an individual

---

[8] In election years, the general election in South Dakota takes place "[o]n the first Tuesday after the first Monday in November." SDCL § 12-2-2.

cannot be an official "candidate" before the start of the election year and does not secure a position on the ballot until about three months before the primary and a little more than seven months before the general election. See SDCL §§ 12-6-4, 12-6-4.1, 12-27-1(4). This creates a limited window of time for which speech concerning ballot issues and candidates could be subject to § 12-27-16, and SFLA's position that there is no temporal limit whatsoever on which communications are subject to the disclaimer and disclosure statement provisions is flawed. Although the statute in this case does not explicitly limit the operation of the statute to communications occurring within a set window of time, such as within 30 or 60 days of an election, the statute does impose some temporal limitation on the application of SDCL § 12-27-16.

SFLA emphasizes that this window of time during which speech is subject to South Dakota's disclosure regime is longer than those upheld in other states. See, e.g., Citizens United, 558 U.S. at 321, 372 (upholding a disclosure requirement for electioneering communications "made within 30 days of a primary or 60 days of a general election"); Gaspee Project, 13 F.4th at 83, 96 (upholding disclosure requirement for electioneering communications "made within sixty days of a general election or referendum or within thirty days of a primary election"); Natl'l Ass'n for Gun Rights v. Mangan, 933 F.3d 1102, 1108, 1122 (9th Cir. 2019) (upholding disclosure requirement for communications "made within 60 days of the initiation of voting in an election"). SFLA has a point, but nowhere in case law is there a set threshold of time before the election where disclaimers and disclosures can be required, and this Court is ruling on a facial challenge only since SFLA's communications came very close in time to a primary election and thus SFLA does not make this claim as a separate as-applied challenge.

A governmental interest in informing voters about the source of a communication may apply equally to all communications which concern a measure "submitted to voters at any election"

or a person "seek[ing] nomination for or election to public office" whether such communication is made six days or six months before an election. Moreover, any determinations of when the disclosure most usefully serves the state's informational interest are best left to the legislature. See Buckley, 424 U.S. at 83 (indicating setting spending thresholds is "necessarily a judgmental decision, best left . . . to congressional discretion"); Gaspee Project, 13 F.4th at 92 (explaining the "line-drawing exercise – which asks, at bottom, whether to mandate a list of five top donors or some greater or lesser number – is a task best left to the legislature"). For these reasons, the statute's time limits, though more expansive than those in other states, do not justify invalidating the statute as a whole on a facial challenge as overbroad.

SFLA also asserts in Count I that South Dakota's low spending threshold subjecting certain speech to the disclosure requirement makes the statute overbroad and may apply to general political speech and not just election-related speech. This Court's ruling would be different if SDCL § 12-27-16 indeed applied to general political speech because political speech "is at the very core of the First Amendment's protections." Winred, Inc. v. Ellison, 59 F.4th 934, 947 (8th Cir. 2023). But, as discussed previously, the statute does not apply to general political speech but only to communications concerning a candidate or ballot issue, thus limiting the range of speech swept into South Dakota's regulatory scheme. Although the minimum threshold for disclosures is just $100 under SDCL § 12-27-16(1), other courts have also upheld similarly low thresholds. See, e.g., Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n, 761 F.2d 509, 512 (8th Cir. 1985) (per curiam) (upholding Minnesota's law requiring disclosure for election-related communication spending of or exceeding $50 for legislative races or $100 for state races or ballot questions); Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 59–61 (1st Cir. 2011) (upholding Maine's law requiring disclosure for express advocacy communication expenditures exceeding $100); Nat'l Ass'n for

32

Gun Rights, 933 F.3d at 1122 (upholding Montana's law requiring disclosure for election-related communication spending exceeding $250). As the Supreme Court has recognized, the legislature is in the best position to set a spending threshold. Buckley, 424 U.S. at 83 (indicating setting spending thresholds is "necessarily a judgmental decision, best left . . . to congressional discretion"); see also Gaspee Project, 13 F.4th at 92 (explaining the "line-drawing exercise – which asks, at bottom, whether to mandate a list of five top donors or some greater or lesser number – is a task best left to the legislature"). Therefore, SFLA has not demonstrated it is entitled to relief on its facial overbreadth claim for the statute's $100 spending threshold. For these same reasons, to the extent SFLA presents an as-applied challenge by alleging that its communications cost slightly more than $100, this challenge also can be dismissed.

When there has been an independent communication expenditure, South Dakota law requires filing a disclosure statement within 48 hours of the funded communication's publication. SDCL § 12-27-16(2). The disclosure statement must "[i]dentify the person or entity making the expenditure," including providing a mailing address and website; information about the communication, including the amount spent on it and its content and subject matter; and the name and title of various individuals associated with any entity that made a communication expenditure subject to the statute. SDCL § 12-27-16(3). SFLA argues that this requirement unconstitutionally "subjects organizations to ongoing disclosure requirements" for communication expenditures. Doc. 24 ¶ 59. This argument is without merit.

First, the one-time, event-driven reporting requirement is not "ongoing." Certainly, an ongoing reporting regime would impose a greater burden on speech which would potentially fail narrow tailoring, but the statute here only applies once expenditures are made. Compare SDCL § 12-27-16(2)–(3) (requiring a disclosure statement within 48 hours of a communication being

made only when there is a "payment or promise of payment") with <u>Minn. Citizens Concerned for Life, Inc. v. Swanson</u>, 692 F.3d 864, 873, 877 (8th Cir. 2012) (invalidating an "ongoing reporting requirement" that required repeated reporting and that, "[o]nce initiated, . . . is potentially perpetual regardless of whether the association ever again makes an independent expenditure"). Second, the disclosure requirement is not unduly burdensome because the temporal window it sets is reasonable, the form can be completed and filed electronically, and the form only requests basic information useful to identifying the source of a communication.   <u>See</u> SDCL § 12-27-16(2)–(3); Doc. 23 at 25.   The requested information provides voters information about a communication's source, the form does not present onerous filing burdens, and the Eighth Circuit has previously upheld a 48-hour reporting requirement.   <u>See</u> <u>Iowa Right to Life</u>, 717 F.3d at 595–96 (upholding a 48-hour reporting requirement); <u>see also</u> <u>id.</u> (collecting cases upholding 24- and 48-hour reporting requirements).

SFLA advances multiple arguments that the disclaimer and disclosure statement requirements apply to non-election speech, making the statute overbroad and not narrowly tailored. SFLA first argues the statute governs non-election speech because it applies to speech concerning "public office holders."   South Dakota Codified Law § 12-27-16 troublingly includes the term "public office holder" between "candidates" and "ballot questions."[9]   The justification for disclaimer and disclosure requirements is, of course, to inform voters on the source of election-related speech.   <u>See</u> Doc. 23 at 28; <u>Citizens United</u>, 558 U.S. at 369 (explaining a government interest in an informed electorate justifies disclosure requirements).   When speech is about public

---

[9]South Dakota has no legislative history to help explain why the term "public office holder" appears in § 12-27-16.   <u>See</u> <u>S.D. Farm Bureau, Inc. v. Hazeltine</u>, 202 F. Supp. 2d 1020, 1028 (D.S.D. 2002) ("We know that South Dakota, even when the legislature acts, has no legislative history to help guide courts.").

office holders, SFLA argues, it is not inherently election-related and, therefore, no longer relates to or advances the state's legitimate interest in an informed electorate. SFLA has a valid point on this facial challenge because, after all, speech about public office holders is not inherently election-related. A public office holder's tenure in office is not perpetually marked with "candidate" status; rather, he or she only becomes a "candidate" when the public office holder runs for reelection or participates in any other action outlined in SDCL § 12-27-1(4). Extending SDCL § 12-27-16 to speech concerning public office holders disconnects the reporting requirement from its informational purpose and exposes speakers to the statutory requirements for non-election speech, including speech regarding public office holders that is unrelated to election conduct, speech about a public office holder during his or her entire tenure, and speech about a public office holder when that person may not be running (or even eligible) for reelection.

There exists an interpretation of SDCL § 12-27-16 under which "public office holders" is not so broadly interpreted to include non-candidates. South Dakota Codified Law § 12-27-16, by its terms, regulates "independent communication expenditures," which are confined to "communication[s] concerning a candidate or a ballot question." SDCL § 12-27-1(11). Thus, SDCL § 12-27-16's inclusion of "public office holders" does not broaden the statute because communications related to a non-candidate public office holder do not "concern[] a candidate," and therefore would not qualify as an "independent communication expenditure" or necessitate complying with the disclaimer and disclosure statement requirements of § 12-27-16, unless and until the public office holder becomes a "candidate" in an upcoming election. For there to be "public office holders" subject to the statute, those office holders must at the same time be "candidates"; the term "public office holders" is not otherwise defined in SDCL Chapter 12-27.

Moreover, the rule of lenity, applicable to this criminal statute, would require a court to interpret any ambiguity to determine that non-candidates cannot be included in "public office holders." See Fischer v. United States, 529 U.S. 667, 691 (2000); United States v. Bass, 404 U.S. 336, 347 (1971).  SFLA's best argument would be that the inclusion of "public office holder" in SDCL § 12-27-16 renders the statute ambiguous, yet courts must construe ambiguous provisions in a way to preserve a statute's constitutionality.  See McFadden v. United States, 576 U.S. 186, 196–97 (2015); see also Aptheker v. Secretary of State, 378 U.S. 500, 515 (1964) (stating the court "will not consider the abstract question of whether Congress might have enacted a valid statute but instead must ask whether the statute that Congress did enact will permissibly bear a construction rendering it free from constitutional defects").  Here, this Court need not resolve the ambiguity (if indeed there is one) given how "independent communication expenditures" is defined.  Properly read, SDCL § 12-27-16 only governs "independent communication expenditures" and does not extend to communications concerning non-candidate office holders.  If Defendants had enforced the statute against SFLA or anyone for speech about a non-candidate "public office holder," this Court would rule quite differently.

SFLA's next overbreadth argument—and one that doubles as an as-applied challenge—asserts that the statute regulates non-election speech because it applies to issue advocacy and not just express advocacy.  Unlike express advocacy, issue advocacy is not inherently election-related; therefore, SFLA argues, the statute applies to non-election speech and does not advance the government's goal of having an informed electorate.  As discussed above in the standing analysis, SFLA's primary-eve text messages tread close to express advocacy but do not meet the statutory definition in SDCL § 12-27-1(9)(b) of "expressly advocate."  Yet, SDCL § 12-27-16 does not

differentiate between express advocacy and issue advocacy, except as to an unrelated subsection involving polling. See SDCL § 12-27-16(6)(e).

SFLA argues that "Supreme Court precedent requires 'distinguish[ing] campaign speech from issue advocacy.'" Doc. 24 ¶ 5 (quoting FEC v. Wisc. Right to Life, Inc., 551 U.S. 449, 480 (2007)). SFLA misreads Wisconsin Right to Life to insulate its issue advocacy from any regulation. Doc. 24 ¶¶ 56–57. Although the Court in Wisconsin Right to Life acknowledged the importance of determining whether speech was issue or express advocacy, it did not do so to prohibit imposing any and all disclosure requirements on issue advocacy. Rather, before conducting its analysis for an as-applied challenge, the Court merely recognized that campaign speech regulations on issue advocacy may not always be appropriate, noting that "the interests that justify the regulation of campaign speech might not apply to the regulation of genuine issue ads." Wisc. Right to Life, 551 U.S. at 456 (quoting McConnell v. FEC, 540 U.S. 93, 206 n.88 (2003)).

The Supreme Court and many circuits have made clear that the constitutionality of disclosure laws does not hinge on whether the regulated speech constitutes issue or express advocacy. See, e.g., Citizens United, 558 U.S. at 368–69 (refusing to extend the issue/express advocacy distinction relevant to restrictions on independent expenditures to disclosure requirements); Gaspee Project, 13 F.4th at 88 (recognizing "the Supreme Court has rejected the attempt to distinguish between express advocacy and issue advocacy when evaluating disclosure laws – even though the Court has deemed such a distinction relevant when evaluating limits on expenditures" and determining "there is no principled basis for us to distinguish between express advocacy and issue advocacy with respect to election-law disclosure regimes"); Del. Strong Families v. AG of Del., 793 F.3d 304, 308 (3d Cir. 2015) ("Any possibility that the Constitution limits the reach of disclosure to express advocacy or its functional equivalent is surely repudiated

by <u>Citizens United v. FEC</u> . . . ."); <u>Ctr. for Individual Freedom v. Madigan</u>, 697 F.3d 464, 484 (7th Cir. 2012) ("<u>Citizens United</u> made clear that the wooden distinction between express advocacy and issue discussion does not apply in the disclosure context."); <u>Human Life of Wash., Inc. v. Brumsickle</u>, 624 F.3d 990, 1016 (9th Cir. 2010) ("However, even if [appellant's] proposed communications constitute unadulterated issue advocacy, its argument has been foreclosed by the Supreme Court's opinion in <u>Citizens United</u>.").

In this case, then, what matters is not whether the statute applies to express or issue advocacy. Rather, the relevant question is whether the statute's regulation of advocacy—whether express or issue—is narrowly tailored to its informational interests. Here, to the extent the statute applies to expenditures for "independent communications," which consists of speech "concerning a candidate or a ballot question," the disclosure regime only applies to election-related speech. <u>See</u> SDCL § 12-27-1(11). This is because "candidate" or "ballot question" is, by definition, election-related. <u>See</u> SDCL § 12-27-1(4) (defining a "candidate" as one "who seeks nomination for or election to public office"); SDCL § 12-27-1(1) (defining a "ballot question" as a proposal "submitted to voters at any election"). Therefore, any issue advocacy about a candidate or ballot question that triggers the disclosure and disclaimer requirements is inherently linked to an election, narrowly tailoring the statute toward achieving the state's sufficiently important interest in creating an informed electorate. For this same reason, any as-applied challenge arising from SDCL § 12-27-16's application to SFLA's issue advocacy is insufficient to state a claim that the statute unconstitutionally burdens free speech. In sum, SDCL § 12-27-16 survives the facial challenge made in Count I, and those aspects of Count I that are as-applied challenges likewise fail to state a claim as a matter of law.

### 3. Compelled Speech Claim in Count II

Count II of SFLA's Amended Complaint asserts the donor disclosure requirement is an unconstitutional form of compelled speech because it requires political speakers to disseminate a government message that is not narrowly tailored. Parts of Count II repeat facial challenges to SDCL § 12-27-16 and invoke that strict scrutiny should apply, but this Court will not repeat its analysis of those claims.

"The First Amendment protects both the right to speak freely and the right to refrain from speaking at all. The compelled speech doctrine prohibits the government from making someone disseminate a political or ideological message." Ark. Times LP v. Waldrip, 37 F.4th 1386, 1394 (8th Cir. 2022) (cleaned up and citation omitted). Compelled speech inhibiting a speaker's ability to convey his or her intended message is generally unconstitutional. See, e.g., Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557, 572–73 (1995) (finding that requiring a privately-organized parade to include a group whom they wanted to exclude was unconstitutional for "essentially requiring petitioners to alter the expressive content of their parade"); Nat'l Inst. of Family & Life Advocates v. Becerra, 585 U.S. 755, 761, 766 (2018) (invalidating a disclosure requirement that would require pregnancy centers to identify available state abortion resources because it would require presenting information about "the very practice that petitioners are devoted to opposing," which "plainly alters the content of petitioners' speech" (cleaned up and citation omitted)); Riley v. Nat'l Fed'n of Bline, 487 U.S. 781, 795 (1988) (explaining "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech"). Disclosure requirements can constitute violations of the First and Fourteenth Amendments by compelling speech. See NIFLA, 585 U.S. at 138 S. Ct. at 777–79 (invalidating a disclosure requirement on facilities providing "pregnancy-related" services); Miami Herald

Publishing Co. v. Tornillo, 418 U.S. 241, 256 (1974) (invalidating a "compelled printing" requirement on newspapers).

Election-related disclosure requirements, however, have survived constitutional scrutiny. See Gaspee Project, 13 F.4th 79. Similar to SFLA, the petitioners in Gaspee Project relied on NIFLA to argue Rhode Island's on-ad disclosure requirement that included the organization's five largest donors from the previous year was unconstitutional compelled speech. The Court of Appeals for the First Circuit disagreed, explaining that "[d]isclaimers – in the unique election-related context – serve the salutary purpose of helping the public to understand where money comes from. The election-related context . . . is alone sufficient to distinguish" election-related disclaimers from the disclaimers that violated the First Amendment in NIFLA. Gaspee Project, 13 F.4th at 95 (cleaned up and citation omitted).

This is true even when the required on-ad disclaimer could be accessible elsewhere. SFLA argues that "the government could serve [its informational] interest by requiring entities to report that information to the state, which could then publish it online," Doc. 35 at 26, thereby avioding the impact of on-ad disclosures.[10] Immediately accessible voter information is different from information a voter could access through searching state publications and files. See No on E v. Chiu, 85 F.4th 493, 509 (9th Cir. 2023) ("Case law and scholarly research support the proposition that, because of its instant accessibility, an on-advertisement disclaimer is a more effective method

_____

[10] SFLA argues that the requirement fails to serve the government's informational interest because "listing the organization's top five donors might *decrease* viewers' or readers' information by giving them a distorted view of the organization's overall donors" and because the disclosure requirement could result in donors being listed on messages "with which they disagree— potentially *misleading* voters." Doc. 35 at 26–27. This is a novel argument but not one that renders the statute unconstitutional. Listing an organization's top five donors gives voters and the general public a view of the top five funders of the organization, which is useful information in understanding who funds the messenger, even if those donors may not directly approve of the particular message.

of informing voters than a disclosure that voters must seek out."); Gaspee Project, 13 F.4th at 91 ("The on-ad donor disclaimer, moreover, is not entirely redundant to the donor information revealed by public disclosures. . . . [T]he on-ad donor disclaimer provides an instantaneous heuristic by which to evaluate generic or uninformative speaker names."); Majors v. Abell, 361 F.3d 349, 353 (7th Cir. 2004) ("But of course the very thing that makes reporting less inhibiting than notice in the ad itself—fewer people are likely to see the report than the notice—makes reporting a less effective method of conveying information that by hypothesis the voting public values."). Therefore, requiring the on-ad disclaimers is narrowly tailored to South Dakota's informational interest because it informs voters of the source of a communication in a manner other alternatives could not similarly do.

The fact that the disclaimer consumes space or time in a communication that the speaker would have used in a different manner similarly does not thereby make the donor-disclosure requirement not narrowly tailored. SFLA cites American Beverage Ass'n v. City & County of S.F., 916 F.3d 749, 754 (9th Cir. 2019) and R.J. Reynolds Tobacco Co. v. FDA, 696 F.3d 1205, 1208 (D.C. Cir. 2012) as support for its position. In both cases, the courts invalidated a statute mandating warnings that constituted 20% of the advertisement or packaging. These cases, however, involve commercial products and are not analogous to the present case; they do not address the specific issue of on-ad disclaimers for election-related communications. In the election context, donor disclaimers are not unconstitutional as compelled speech simply because they use ad space the speaker would have preferred using differently. See Citizens United, 558 U.S. at 320, 366, 371 (upholding a requirement for a disclaimer that occupied 40% of the ad space); No on E v. Chiu, 85 F.4th 493, 507–08 (9th Cir. 2023) (affirming denial of a preliminary injunction where plaintiffs did not show likely success on their claim that California's disclaimer requirement was

unconstitutional for constituting up to 33% of a video ad or 35% of a printed ad); Smith v. Helzer, 95 F.4th 1207, 1219–21 (9th Cir. 2024) (affirming denial of a preliminary injunction where plaintiff was not likely to succeed on its challenge to Alaska's disclaimer requirement that taking time or space on the ad violated the First Amendment).

For these reasons, South Dakota's statute requiring on-ad donor disclosures is not the sort of compelled speech that violates the First Amendment.  To the extent the requirement imposes any burden on speech, the statute is narrowly tailored to the state's significant interest in an informed electorate.  Therefore, SFLA has failed to plead a viable claim of constitutional overbreadth, and Defendants' motion to dismiss the facial component of SFLA's compelled speech claim in Count II is granted.

SFLA in Count II alleges both a facial and an as-applied challenge, Doc. 24 ¶ 80, that SDCL § 12-27-16 is constitutionally invalid "because it applies at all times to all speech concerning public office holders, including issue advocacy not related to or close in time to an election," Doc. 24 ¶ 76.  The record is unclear whether the mailer messages sent by SFLA, which plainly are issue advocacy, targeted non-candidate office holders, but for the reasons explained above, the statute does not extend to non-candidate public office holders; the regulations apply only to "independent communication expenditures," which, by definition, means "a communication concerning a candidate or a ballot question."  SDCL §§ 12-27-1(11); 12-27-16. SFLA's claims in Count II ultimately do not survive to the extent the count alleges facial overbreadth or an as-applied challenge on the basis of issue advocacy or speech regarding public office holders.

There remains a narrow as-applied challenge in Count II that survives the motion to dismiss.  The question of whether SFLA is the sort of organization that receives a "contribution"

under SDCL § 12-27-1(6) and the absence of so-called "off-ramps"[11] to on-ad disclaimers in the South Dakota statute cause this Court to hesitate in granting the motion to dismiss as to that narrow as-applied challenge in Count II.

### 4. Vagueness Claim in Count III

SFLA's final claim is that the statute's use of "concerning," as well as its references to "public office holders" within the definition of "independent communication expenditures," make the disclaimer requirement of SDCL § 12-27-16 unconstitutionally vague. See Doc. 24 ¶ 90. Courts rely on "the common usage of statutory language" in deciding whether a statute is unconstitutionally vague. Stephenson v. Davenport Cmty. Sch. Dist., 110 F.3d 1303, 1309 (8th Cir. 1997). "A government policy is unconstitutionally vague if it fails to provide adequate notice of the proscribed conduct and lends itself to arbitrary enforcement." Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist., 83 F.4th 658, 668 (8th Cir. 2023) (cleaned up and citation omitted). "[W]hen speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253–54 (2012). However, a federal court has an "obligation to construe the statute, if that can be done consistent with the legislature's purpose, to avoid the shoals of vagueness." Buckley, 424 U.S. at 77–78.

Here, the use of "concerning" is not unconstitutionally vague. The plain meaning of "concerning" is as a preposition meaning "relating to" or "regarding." None of these phrases leave

---

[11] Many on-ad donor disclosure statutes offer off-ramps for donors who do not want to be disclosed by allowing them to donate less than the triggering value and/or opting their donation out of use for electioneering communications. See, e.g., Gaspee, 13 F.4th at 92 (referring to "off ramp" provision in finding on-ad donor disclosure rule constitutionally narrowly tailored). South Dakota's statutes offer neither of these options.

an average person uncertain about what type of speech "concerns" a candidate or ballot question. SFLA provided no examples of speech that may be "concerning" a candidate or ballot question under one interpretation of that statutory language but that does not under a different interpretation. Nor does SFLA assert that communications "concerning" a candidate or ballot question extends to communications that should not be subject to the statute or that would cause an average speaker to be uncertain about whether particular speech was subject to the statute's disclosure and disclaimer regime.  For these reasons, SFLA's vagueness claim based on the statute's use of "concerning" fails to state a viable claim.

SFLA also argues that the statute is vague because it is unclear whether the statute regulates speech about public office holders.  This Court dealt at length with this argument previously to explain why the statute textually does not extend to non-candidate office holders and, if ambiguous, why that ambiguity must be resolved to limit SDCL § 12-27-16 to "candidates and ballot questions" and not to extend to non-candidate office holders.

**IV.    Conclusion**

For the reasons explained, it is

ORDERED that Defendants' Motion to Dismiss, Doc. 22, is granted in part and denied in part.  All of Counts I and II and the facial challenge in Count II are dismissed, but the motion to dismiss is denied regarding the as-applied portion of Count II concerning whether SFLA receives a "contribution" constitutionally subject to disclosure and the absence of "off ramps" for donors to avoid on-ad listing requirements on certain messages.

DATED this  27ᵗʰ  day of August, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

44