IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| STUDENTS FOR LIFE ACTION,<br>Plaintiff,<br><br>v.<br><br>MARTY JACKLEY, *in his official capacity as Attorney General of the State of South Dakota*, and MONAE JOHNSON, *in her official capacity as South Dakota Secretary of State*,<br>Defendants. | No. 3:23-CV-3010-RAL |

**Plaintiff's Combined Motion for Summary Judgment and Memorandum of Law**

Plaintiff, Students for Life Action, moves, pursuant to Fed. R. Civ. P. 56(a), for an order granting it summary judgment, declaring the disclosure requirement in S.D. Codified Laws § 12-27-16(1)(c) unconstitutional and enjoining its enforcement against Plaintiff. There are no material facts in dispute and Plaintiff is entitled to judgment as a matter of law. In support of this motion, Plaintiff submits its Memorandum of Law and the accompanying Statement of Undisputed Facts.

## Table of Contents


Introduction ..... 1

Standard of Review ..... 2

Argument ..... 2

I. South Dakota's on-ad top-five donor-disclosure requirement violates the First and Fourteenth Amendments as applied to SFLA because it provides no off-ramp for donors to avoid disclosure ..... 2

A. South Dakota's on-ad top-five donor-disclosure requirement cannot survive exacting scrutiny because it is not narrowly tailored to serve the government's informational interest ..... 3

B. Other courts have found similar disclosure laws that do not give donors a means of opting out of disclosure violate the First Amendment ..... 7

II. SFLA is entitled to a permanent injunction of Section 12-27-16(1)(c)'s on-ad top-five donor-disclosure requirement ..... 12

Conclusion ..... 13

Certificate of Service ..... 15

## Table of Authorities

### *Cases*


*Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ........ 5, 6, 7

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........ 5–6

*Canada v. Union Elec. Co.*, 135 F.3d 1211 (8th Cir. 1997) ........ 2

*Citizens United v. FEC*, 558 U.S. 310 (2010) ........ 4, 5

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022) ........ 6

*Dinner Table Action v. Schneider*, No. 1:24-cv-00430, 2025 U.S. Dist. LEXIS 134052 (D. Me. July 15, 2025) ........ 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ........ 12

*Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 650 F.3d 1139 (8th Cir. 2011) ........ 2

*Gaspee Project v. Mederos*, 13 F.4th 79 (1st Cir. 2021) ........ 9–10, 11

*Hispanic Interest Coal. v. Governor of Ala.*, 691 F.3d 1236 (11th Cir. 2012) ........ 13

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995) ........ 3

*Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576 (8th Cir. 2013) ........ 4–5

*Lickteig v. Business Men's Assurance Co. of Am.*, 61 F.3d 579 (8th Cir. 1995) ........ 2

*Marksmeier v. Davie*, 622 F.3d 896 (8th Cir. 2010) ........ 2

*McCullen v. Coakley*, 573 U.S. 464 (2014) ........ 6

*Miller v. Thurston*, 967 F.3d 727 (8th Cir. 2020) ........ 12

*Morse v. Frederick*, 551 U.S. 393 (2007) ........ 4

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ........ 4

*National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ........ 4

*Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000) ........................4

*Phelps-Roper v. Nixon*, 509 F.3d 480 (8th Cir. 2007)...........................................13

*Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972)...........................................4

*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)................................................3

*Rio Grande Foundation v. Oliver*, 727 F. Supp. 3d 988 (D.N.M. 2024) .............11

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019)..................................................13

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006)...............3

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022) ..........................................................................................................6

*Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622 (1994)............................................3

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) .................................3

*Wooley v. Maynard*, 430 U.S. 705 (1977) ................................................................3

*Wyoming Gun Owners v. Gray*, 83 F.4th 1224 (10th Cir. 2023).......................7, 8

***Other Authorities***

S.D. Codified Laws § 12-27-16 .................................................... 1, 2, 5, 6, 7, 12, 13

Federal Rule of Civil Procedure 56..........................................................................2

## Introduction

Plaintiff Students for Life Action (SFLA)—a nonprofit advocacy group that communicates with the public around the country, including South Dakota, about pro-life issues—brought this lawsuit challenging provisions in South Dakota's campaign finance law that impose restrictions on organizations that make "independent communication expenditures" as unconstitutional under the First and Fourteenth Amendments. Plaintiff's First Amended Complaint—the operative complaint—alleges three counts: Count I alleges that South Dakota Codified Laws § 12-27-16 violates the First and Fourteenth Amendments on its face because it is overbroad. Count II alleges that the on-ad donor-disclosure rule set forth in Section 12-27-16 violates the First and Fourteenth Amendments. And Count III alleges that the on-ad top-five donor-disclosure rule violates the First and Fourteenth Amendments because it is void for vagueness.

Defendants filed a motion to dismiss, Dkts. 22, 23, and this Court dismissed Counts I and III and dismissed Count II in part, leaving only SFLA's as-applied challenge to Section 12-27-16(1)(c) insofar as it compels on-ad donor listings without allowing donors to opt out of disclosure. Dkt. 44.

SFLA submits this motion for summary judgment on that remaining claim.[1] South Dakota's on-ad disclosure rule requires every communication concerning a candidate or ballot question that costs more than $100 include a statement of the organization's five biggest donors from the past year. For the reasons set forth in

[1] SFLA preserves the right to appeal its dismissed claims. Nothing in this motion is a concession of those claims.

this brief, the Court should enter summary judgment for SFLA, declare that the on-ad top-five donor-disclosure requirement set forth in Section 12-27-16(1)(c) violates the First and Fourteenth Amendments as applied to SFLA, and enjoin Section 12-27-16(1)(c) as to SFLA.

## Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the record establishes no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212 (8th Cir. 1997). A material fact is one that could affect the case's outcome. *Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 650 F.3d 1139, 1144 (8th Cir. 2011). A dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party on that issue. *Marksmeier v. Davie*, 622 F.3d 896, 899–900 (8th Cir. 2010). Disputes that are immaterial or not genuine do not preclude summary judgment. *Id.* at 899. Once the movant has met its Rule 56(c) burden, the nonmovant must offer more than "metaphysical doubt" about the material facts. *Lickteig v. Business Men's Assurance Co. of Am.*, 61 F.3d 579, 583 (8th Cir. 1995).

## Argument

### I. South Dakota's on-ad top-five donor-disclosure requirement violates the First and Fourteenth Amendments as applied to SFLA because it provides no off-ramp for donors to avoid disclosure.

SFLA is entitled to summary judgment because the on-ad top-five donor-disclosure requirement set forth in S.D. Codified Laws § 12-27-16(1)(c), ("the on-ad disclosure rule") violates the First and Fourteenth Amendments as applied to SFLA

because the law does not allow its donors to avoid disclosure by excluding their donations from independent communication expenditures in South Dakota.

### A. South Dakota's on-ad top-five donor-disclosure requirement cannot survive exacting scrutiny because it is not narrowly tailored to serve the government's informational interest.

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The general rule is that the government may not compel a person "to utter what is not in his mind." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943). Compelled speech on the government's behalf is impermissible if it "affects the message conveyed." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). Put another way, the government violates a speaker's First Amendment rights by "interfer[ing] with the [speaker's] ability to communicate its own message." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 64 (2006).

Normally, "[l]aws that compel speakers to utter or distribute speech bearing a particular message," *Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622, 642 (1994), are considered content based—they target speech based on its communicative content—and are subject to strict scrutiny—and the government must prove that they are narrowly tailored to serve a compelling state interest, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-based restrictions on speech are particularly problematic because they "completely undercut the profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (cleaned up).

The Supreme Court has long held that political speech is at the core of what the First Amendment is designed to protect. *Morse v. Frederick*, 551 U.S. 393, 403 (2007); *see also e.g., NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) ("[E]xpression on public issues has always rested on the highest rung of the hierarchy of First Amendment values") (cleaned up); *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 411 (2000) (Thomas, J., dissenting) ("Political speech is the primary object of First Amendment protection"). Given the vital importance of political speech and its status as the primary object of the First Amendment and the Court's concern about problems of content-based restrictions on speech to open, public debate, disclosure and disclaimer laws involving speech related to elections should be given the highest form of First Amendment scrutiny—strict scrutiny. *See e.g., National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018).

However, the Supreme Court and other appellate courts have held that First Amendment challenges to donor disclosure and disclaimer laws involving speech related to elections are evaluated under exacting scrutiny. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 366–67 (2010); *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 591 (8th Cir. 2013); *see also* Dkt. 44.[2] But even under exacting scrutiny the on-ad disclosure rule cannot survive.

[2] Plaintiff acknowledges this precedent but preserves its argument that these laws are subject to strict scrutiny for appeal.

"[E]xacting scrutiny requires that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611 (2021) (cleaned up). In *Bonta*, the Supreme Court clarified that in applying exacting scrutiny, a court must determine whether the disclosure requirement is narrowly tailored to the important government interest. "Narrow tailoring is crucial where First Amendment activity is chilled–even if indirectly–because First Amendment freedoms need breathing space to survive." *Id.* at 609 (cleaned up). Lower courts have not always imposed the narrow tailoring requirement when applying exacting scrutiny. *See, e.g.*, *Iowa Right to Life Comm.,* 717 F.3d at 591.

In this case, there must be a substantial relation between the on-ad disclosure rule set forth in S.D. Codified Laws § 12-27-16(1)(c) and a sufficiently important government interest and that requirement must be narrowly tailored to the interest it promotes. *Id.* Plaintiff does not dispute that courts have found a sufficiently important government interest in informing voters of who is financing election-related speech, *see, e.g., Citizens United*, 558 U.S. at 369 ("the public has an interest in knowing who is speaking about a candidate shortly before an election"); *Buckley v. Valeo*, 424 U.S. 1, 66–67 (1976), Dkt. 44.[3] Nonetheless, the on-ad disclosure rule

[3] Plaintiff reserves, for purposes of appeal, the argument that the informational interest in knowing who is speaking about a candidate is not sufficiently important to overcome a speaker's or donor's First Amendment right to anonymous speech.

is not narrowly tailored to serve the important government interest in providing information about who is speaking about elections.

"A critical feature of [the narrow tailoring] inquiry turns on whether the [government] 'seriously undertook to address' the problems it faces 'with less intrusive tools readily available to it.'" *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 404 (6th Cir. 2022) (Sutton, C.J.) (quoting *McCullen v. Coakley*, 573 U.S. 464, 494 (2014)); *Bonta*, 594 U.S. at 613 (the government must "demonstrate its need" for the disclosure regime "in light of any less intrusive alternatives." The government bears the burden of demonstrating that the statute is narrowly tailored to serve an important governmental interest. *Cornelio v. Connecticut*, 32 F.4th 160, 177 (2d Cir. 2022).

The on-ad disclosure rule is not narrowly tailored because it has no explicit opt out provision for contributors to SFLA who do not wish to fund its independent expenditures in South Dakota and because it requires the disclosure of SFLA's top five contributors even if some of them give very small amounts of money. Even if some donors explicitly condition their donations to SFLA on their exclusion from use in independent expenditures in South Dakota, their names will still be disclosed on the ads if they are one of the top five donors to SFLA in the previous twelve months. Section 12-27-16(1)(c) has no explicit opt-out system for contributors to SFLA, meaning it necessarily sweeps in speakers who wish to preserve their privacy or anonymity. When donors to an organization explicitly prevent the organization from spending money on independent expenditures in South Dakota,

the government's informational interest vanishes because the on-ad disclaimers provided to voters include donors who are not funding such ads.

This has real consequences for SFLA. SFLA has pleaded that the on-ad disclosure requirement chills the speech and association rights of its donors[4] for fear of exposure and retaliation. *See Bonta*, 594 U.S. at 616. Because Section 12-27-16 has no explicit opt-out system for contributors, donors to SFLA who wish to engage in some form of speech by making donations to SFLA but prefer to avoid attribution will either stop donating to SFLA or reduce the amount of their contributions to avoid disclosure.

### B. Other courts have found similar disclosure laws that do not give donors a means of opting out of disclosure violate the First Amendment.

Courts across the country have invalidated disclosure regimes lacking donor opt-out mechanisms.

The Tenth Circuit has held that a similar disclosure regime in Wyoming that provided no opt out for donors wishing to avoid disclosure by earmarking their donations to exclude the regulated speech was not narrowly tailored to serve the government's informational interest. In *Wyoming Gun Owners v. Gray*, 83 F.4th 1224, 1249 (10th Cir. 2023), Wyoming's campaign finance law required organizations spending over $1,000 on an electioneering communication to disclose donors of $100 or more whose contributions made the communication possible by

[4] Because the Court found that SFLA itself has not properly pleaded that its speech is chilled by the on-ad donor requirement, Dkt. 44, this motion relies on the chilling effect of the statute on its donors, for which the Court found SFLA has standing. *See also, Ams for Prosperity*, 594 U.S. at 615–19.

filing a report with the Secretary of State. *Id.* at 1230–31. Wyoming Gun Owners, a not-for-profit advocacy group advancing Second Amendment rights, aired a radio ad during the 2020 primary election praising the pro-gun credentials of one candidate, while criticizing the opposing candidate. *Id.* at 1231–32.

The Tenth Circuit, in addressing the statute's disclosure requirements, found that Wyoming failed to show that the statute was narrowly tailored to serve the informational interest. *Id.* at 1247. The Court found that the disclosure requirement burdened Wyoming Gun Owners' First Amendment rights because it would be required to disclose all donors making a contribution of $100 or more because the statute provided no way for donors to segregate donations that did not relate to a particular independent expenditure made by Wyoming Gun Owners. *Id.* at 1248–49. The Court suggested that the statute might have been narrowly tailored if it included an earmarking provision whereby disclosure was required only for those donors who have specifically earmarked their contributions for electioneering purposes. *Id.* at 1248. But it said an earmarking provision wasn't necessary to survive narrow tailoring. *Id.* at 1249 n.8. What was important to the Court's decision was that to survive narrow tailoring there must be a way for donors to opt out of the disclosure scheme while maintaining the ability to speak. *Id.* at 1249. Since the only way Wyoming Gun Owners could speak and comply with the statute was to overdisclose, the government did not meet its burden to show that the disclosure rule was narrowly tailored to serve its information interest. *Id.* at 1250.

The District of Maine likewise enjoined a disclosure regime lacking an opt-out mechanism and sweeping in even very small donors. Maine disclosure law required that a person, party committee, or political action committee that makes any independent expenditure in excess of $250 during any one candidate's election to disclose the total contributions from each contributor regardless of the amount of the contribution. *Dinner Table Action v. Schneider*, No. 1:24-cv-00430, 2025 U.S. Dist. LEXIS 134052, at *15 (D. Me. July 15, 2025). The court found that the disclosure requirement was not narrowly tailored to serve the government's informational interest because "it has no *explicit* opt out provision for contributors who do not wish to fund independent expenditures, and, most importantly, it requires the disclosure of contributors who give even very small amounts of money." *Id*. at *18 (emphasis added). "Where the Act's disclosure requirement sweeps so broadly and provides no meaningful opportunity for anonymous contributions, it cannot be described as narrowly tailored to Maine's informational interest." *Id*.

Similarly, in this case, the South Dakota statute does not provide an explicit opt out provision for donors to SFLA who do not want their donations to be used for independent expenditures in South Dakota and requires disclosure of donors who give even small amounts of money because it contains no minimum threshold for disclosure.

Even cases where courts have upheld disclosure requirements support SFLA's claim that the on-ad disclosure requirement is not narrowly tailored to serve the government's informational interest. In *Gaspee Project v. Mederos*, 13 F.4th 79 (1st

Cir. 2021), the First Circuit addressed Rhode Island's disclosure requirement, which, relevant here, required that organizations making independent expenditures or electioneering communications "must file a report with the [Rhode Island State] Board [of Elections] disclosing all donors who contributed $1,000 or more to the organization's general fund if the general fund was used to finance qualifying expenditures," and such organizations must "list their five largest donors from the previous year on the electioneering communication itself (subject, however, to several exceptions)." *Id.* at 83.

In addressing whether these provisions were narrowly tailored to serve the government's information interest, the First Circuit found several limitations in the statute important to its decision. First, the restrictions only applied to organizations that spent $1,000 or more on independent expenditures or electioneering communications within one calendar year. *Id.* at 88. Second, the restrictions only applied to independent expenditures made within one year of an election and to electioneering communications made either within thirty or sixty days of an election. Third, an electioneering communication must be "targeted to the relevant electorate," meaning that it "can be received by two thousand . . . or more persons in the district the candidate seeks to represent or the constituency voting on the referendum." *Id.* at 88–89 (citation omitted). Finally, the Court said: "Importantly, the Act provides off-ramps for individuals who wish to engage in some form of political speech but prefer to avoid attribution" by opting out of having their monies used for independent expenditures or electioneering communications. *Id.* at 89. The

disclosure requirements in *Gaspee Project* were narrowly tailored because "[t]aken together, these limitations on the Act's reach only require disclosure of relatively large donors who choose to engage in election-related speech." *Id.*

Rhode Island's disclosure rules are narrowed by a $1,000 spending threshold, pre-election temporal limits, a targeting requirement, and explicit off-ramps for donors. South Dakota has none of these limits: it triggers at $100, imposes no temporal limits, has no targeting requirement, and offers no opt-out mechanism. The on-ad disclosure rule at issue here does not meet any of the reasons why the First Circuit held that the Rhode Island disclosure requirement was narrowly tailored.

And in *Rio Grande Foundation v. Oliver*, 727 F. Supp. 3d 988 (D.N.M. 2024), the district court, in evaluating whether New Mexico's disclosure requirements were narrowly tailored to serve the informational interest, found that the statute's "opt-out provision creates a tighter fit between donors to the general fund and New Mexico's important informational interest and is narrowly tailored to that interest." *Id.* at 1012. The statute's opt-out provision provides two limitations that the court deemed important to its holding. First, an organization that makes independent expenditures from a general bank account—not segregated by earmarked donations—is only required to report donors who gave more than $5,000 during an election cycle, "thus only targeting large donors." *Id.* Second, contributors of over $5,000 can opt out of this requirement by sending a written notice that the funds should not be used towards independent expenditures. *Id.*

These cases all stand for the proposition that to survive narrow tailoring, a donor disclosure law must provide some explicit way for donors to an organization making independent expenditures to opt out of the disclosure requirements. Courts have found several ways that states can do so, including thresholds on the amount of donations, temporal limits, and, most importantly, opt-out provisions. Section 12-27-16 contains none of these mechanisms. Thus, Defendants cannot meet their burden to show that the on-ad top-five disclosure requirement is narrowly tailored to serve the government's informational interest.

Therefore, this Court should enter summary judgment in favor of Plaintiff and declare that the donor disclosure requirement set forth in S.D. Codified Laws § 12-27-16(1)(c) violates the First Amendment as applied to SFLA.

## II. SFLA is entitled to a permanent injunction of Section 12-27-16(1)(c)'s on-ad top-five donor-disclosure requirement.

Because SFLA prevails on the merits under exacting scrutiny, it is entitled to a permanent injunction.

Once the moving party shows actual success on the merits—as Plaintiff has done here—the court must consider three factors to determine whether a permanent injunction is warranted: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest. *Miller v. Thurston*, 967 F.3d 727, 735–36 (8th Cir. 2020).

Plaintiff is irreparably harmed by the disclosure requirement. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, the disclosure

requirement chills Plaintiff's donors' speech, a classic irreparable injury. Similarly, the balance of the harms and the public interest favor granting the injunction. The determination of the balance of the harms and the public interest is dependent on the determination of the merits of a First Amendment challenge because it is always in the public interest to protect constitutional rights and the balance of equities generally favors the constitutionally protected freedom of expression. *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) (citation omitted); *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007). South Dakota "has no interest in enforcing a state law that is unconstitutional." *Hispanic Interest Coal. v. Governor of Ala.*, 691 F.3d 1236, 1249 (11th Cir. 2012).

Plaintiff has therefore met its burden to show that a permanent injunction should be issued.

**Conclusion**

The on-ad top-five donor-disclosure requirement of S.D. Codified Laws § 12-27-16(1)(c) is not narrowly tailored to serve the government's informational interest. It provides no explicit way for donors to SFLA to avoid being disclosed on ads by opting out of funding SFLA's independent expenditures in South Dakota, while continuing to fund SFLA's other operations. Therefore, S.D. Codified Laws § 12-27-16(1)(c) violates the First and Fourteenth Amendments as applied to SFLA. The Court should enter summary judgment in favor of SFLA, declare the disclosure requirement in S.D. Codified Laws § 12-27-16(1)(c) unconstitutional, and enjoin its enforcement against SFLA.

Dated: September 3, 2025

Respectfully Submitted,

By: ______________________

Jeffrey M. Schwab
(Pro Hac Vice)
Noelle Daniel
(Pro Hac Vice)
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
Telephone: 512-481-4400
jschwab@ljc.org
ndaniel@libertyjusticecenter.org

/s/ Aaron P. Pilcher

Aaron Pilcher, Attorney at Law
79 3rd St. SE
Huron, South Dakota 57350
Telephone: (605) 554-1661
Fax: (605) 5554-1662
aaronpilcherlaw@gmail.com

*Attorneys for Plaintiff Students for Life Action*

**Certificate of Service**

I hereby certify that on this 3rd day of September 2025 a true and correct copy of the foregoing document was served upon the following person, by placing the same in the service indicated, addressed as follows:

| | |
|---|---|
| Grant M. Flynn<br>Assistant Attorney General<br>1302 East Hwy 14, Suite 1<br>Pierre, SD 57501-8501<br>Grant.Flynn@state.sd.us | [ ] U.S. Mail<br>[ ] Hand Delivery<br>[ ] Facsimile<br>[ ] Federal Express<br>[X] Case Management/Electronic Case Filing |

/s/ Aaron P. Pilcher
Attorney for Plaintiff