UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| STUDENTS FOR LIFE ACTION,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; AND MONAE JOHNSON, IN HER OFFICIAL CAPACITY AS SOUTH DAKOTA SECRETARY OF STATE;<br><br>Defendants. | 3:23-CV-03010-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Students for Life Action (SFLA) brought this suit against Marty Jackley, in his official capacity as Attorney General of the State of South Dakota, and Monae Johnson, in her official capacity as South Dakota Secretary of State (collectively, Defendants). SFLA alleges South Dakota's statute requiring on-ad donor disclaimers and disclosure statements for certain political advocacy speech violates the First and Fourteenth Amendments. See generally Doc. 24. Defendants moved to dismiss, arguing that SFLA lacks standing and that the statute is constitutional, Doc. 22, which this Court granted in part, Doc. 44. Following the Opinion and Order on the Motion to Dismiss, only two parts of the SFLA's claims remained: the as-applied portion of Count II concerning whether SFLA receives a "contribution" constitutionally subject to disclosure and the absence of "off-ramps" for donors to avoid on-ad listing requirements on certain messages. Doc. 44 at 13, 44.

1

Both SFLA and Defendants have moved for summary judgment. Docs. 64, 67. Because SFLA has failed to show a cognizable injury in fact for the reasons explained below, this Court concludes that SFLA lacks standing to bring its as-applied challenge to SDCL § 12-27-16. However, even if SFLA had standing, SDCL § 12-27-16 is constitutional despite the statute's lack of "off-ramp" provisions because South Dakota has a sufficiently important interest in an informed electorate, the donor-disclaimer requirements are substantially related to that interest, and the requirements are narrowly tailored to serving it.

## I.    Facts

There are no genuine issues of material facts, and the parties largely agree upon the core facts. SFLA is a 501(c)(4) nonprofit based in Fredericksburg, Virginia, that conducts national pro-life activism. Doc. 73 ¶¶ 8–9; Doc. 68-1 ¶¶ 3–4. SFLA "engages in issue advocacy nationwide" and "limits its voter communications to candidates' positions on abortion-related issues and to encourage activism for pro-life policies; it does not tell voters which candidate to vote for or against." Doc. 73 ¶¶ 8–9; Doc. 68-1 ¶¶ 3–4. On June 6, 2022, SFLA sent various text messages intended to inform "voters about 12 incumbent [South Dakota] legislators' voting records on banning chemical abortions and about their responses to candidate surveys" but that did not directly tell "the recipients who [sic] they should or should not vote for." Doc. 73 ¶¶ 11–12; Doc. 68-1 ¶¶ 6–7, 5–9 (attaching text messages). These text messages were sent the day before the South Dakota party primary election and cost $116.62 each. Doc. 73 ¶ 11; Doc. 68-1 ¶ 6.

The June 6, 2022 text messages, attached by SFLA both to the First Amended Complaint and to the Declaration of SFLA Treasurer Tina Whittington, which was submitted with SFLA's Motion for Summary Judgment, took various forms. For example, for those candidates who had voted against South Dakota House Bill 1208 to make it a felony offense to "dispense, distribute,

manufacture, sell, or transfer any chemical abortion drug," defined as "mifegyne, mifeprex, mifepristone, and any other pharmaceutically equivalent drug,"[1] the text read that the candidate

> voted against Students for Life Action's HB 1208 to Ban Chemical Abortions in S. Dakota, and failed to return his SFLAction candidate survey pledging to vote pro-life. Please take 5 seconds to tell him to reverse course if nominated in the June 7th primary by signing our petition to ban chemical abortion

with a link attached. Doc. 68-1 at 5–9. For its favored candidates, SFLA's text message template was either

> I have great news! [Candidate name] returned our survey and pledged to vote 100% pro-life if elected. [He/She] is the only candidate in [Senate/House] District [number] to do so. Please take 5 seconds to encourage [him/her] to keep [his/her] promise if nominated in the June 7th primary by signing our petition to ban chemical abortion

with a link attached, Doc. 68-1 at 5–9, or

> I have great news! [Candidate name] returned our survey and pledged to vote 100% pro-life if elected. Please thank [candidate name] for pledging to defend the preborn and encourage [him/her] to keep [his/her] promise to defend life if nominated in the Tuesday, June 7th Republican Primary.

Doc. 68-1 at 5–9. The texts did not contain any on-ad disclaimer, and SFLA filed no disclosure statement under SDCL Chapter 12-27. Defendants took no enforcement action of any nature against SFLA as a consequence of the text messages. In its Amended Complaint and its Statement of Undisputed Material Fact, SFLA represents that it intends to continue sending similar messages "concerning candidates and office holders" in the future. Doc. 24 ¶ 22; Doc. 73 ¶ 10.

SFLA also sent out mailers to South Dakota voters during 2022.[2] Doc. 73 ¶ 13; Doc. 68-1 ¶ 8. The mailers targeted certain South Dakota House of Representative members who had voted "no" on House Bill 1208 and provided their phone numbers before concluding with encouragement

---

[1] The text of the 2022 House Bill 1208 is at https://sdlegislature.gov/session/bill/23057/230675.

[2] The timing of these mailers in connection to any primary or election is unclear in the record.

to call the representative to tell him or her "to stop opposing pro-life legislation," or, in some iterations, "pro-life bills." Doc. 24-2 at 2–9; Doc. 73 ¶ 13; Doc. 68-1 ¶ 8. Other mailers urged South Dakotans to contact their state legislators to encourage them to continue to support pro-life legislation. Doc. 68-1 at 12–13. At least some of these mailers listed the mailing and website address of SFLA and stated, "Paid for & authorized by [SFLA] . . . Not by a candidate," or "Paid for & authorized by [SFLA] . . . Not authorized or paid for by any candidate or candidate's committee." Doc. 68-1 at 10, 13. The mailers did not otherwise contain any on-ad disclaimer and SFLA filed no disclosure statement under SDCL Chapter 12-27. SFLA faced no enforcement action from Defendants or anyone else stemming from the mailings and intends to engage in similar messaging in the future. Doc. 68-1 ¶ 5.

SFLA accepts donations that are earmarked for certain uses. Doc. 73 ¶ 15; Doc. 68-1 ¶ 10. "As a rule, SFLA does not disclose the names of its donors unless required to by law, because many of SFLA's donors find this anonymity important, or even vital to their giving." Doc. 73 ¶ 16; Doc. 68-1 ¶ 11. SFLA represents through a declaration of its treasurer that if it "were required to disclose its top five donors in given year, even if those donors have made donations earmarked so those funds will not be used for communications concerning a candidate or ballot question in South Dakota, donors may reduce the amount of their donations or stop donating entirely." Doc. 73 ¶ 17; Doc. 68-1 ¶ 12.

South Dakota requires on-ad donor disclaimers and disclosure statements for certain political advocacy-related communications. See SDCL § 12-27-16. South Dakota Codified Law § 12-27-16, in relevant part, states:

> The following apply to independent communication expenditures by persons and entities related to communications concerning candidates, public office holders, ballot questions, or political parties who are not controlled by, coordinated with,

4

requested by, or made upon consultation with that candidate, political committee, or agent of a candidate or political committee:

(1)  Any person or entity that makes a payment or promise of payment totaling more than one hundred dollars, including donated goods or services for an independent communication expenditure that concerns a candidate, public office holder, ballot question, or political party shall append to or include in each communication a disclaimer that clearly and forthrightly:

  (a)  Identifies the person or entity making the independent communication expenditure for that communication;

  (b)  States the mailing address and website address, if applicable, of the person or entity; and

  (c)  If an independent expenditure is undertaken by an entity not including a candidate, public office holder, political party, or political committee, the following notation must be included: "Top Five Contributors," including a listing of the names of the five persons making the largest contributions in aggregate to the entity during the twelve months preceding that communication. An independent communication expenditure made by a person or entity shall include the following: "This communication is independently funded and not made in consultation with any candidate, public office holder, or political committee.".

A violation of this subdivision is a Class 2 misdemeanor. A subsequent offense within a calendar year is a Class 1 misdemeanor;

(2)  Any person or entity making a payment or promise of payment of more than one hundred dollars, including donated goods and services, for a communication described in subdivision (1) shall file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published.

SDCL § 12-27-16. Both Class 1 and 2 misdemeanors expose a violator to jail time or a fine.

SDCL § 22-6-2. The South Dakota Secretary of State is charged with enforcing civil penalties

against violations of SDCL § 12-27-16. SDCL § 12-27-29.2.

In 2023, SFLA filed a Complaint, Doc. 1, which it subsequently amended, Doc. 24,

alleging that SDCL § 12-27-16 requiring on-ad donor disclaimers and disclosure statements for

certain advocacy-related communications violates the Free Speech Clause of the First Amendment

and the Due Process Clause of the Fourteenth Amendment. Doc. 24 ¶¶ 55–93.[3] The on-ad donor

---

[3] In Defendants' Statement of Undisputed Material Facts, Defendants raise that in the run-up to the 2024 election, which occurred the November after this Court's August 2024 Opinion and Order

disclaimer requirement mandates that certain communications costing over $100 identify who is

"making the independent communication expenditure for that communication," include a mailing

and website address for the person or entity making the expenditure, and list the entity's top five

contributors from the prior twelve-month period before the communication. SDCL § 12-27-

16(1)(a)–(c). The disclaimer must also state the following: "This communication is independently

funded and not made in consultation with any candidate, public office holder, or political

---

granting the motion to dismiss in part, SFLA issued a pamphlet stating, "Vote No," on proposed Amendment G. See Doc. 75 ¶ 18 (undisputed as to the fact the pamphlet says, "Vote No"). Amendment G sought to establish a state constitutional right to abortion. See Constitutional Amendment Attorney General's Statement, S.D. Sec. of State, https://sdsos.gov/elections-voting/assets/2024%20Assets/2024CAAGRickWeilandabortionfinal.pdf (Aug. 24, 2022). SFLA does not include or mention the Amendment G pamphlet in its Statement of Undisputed Material Facts, motion for summary judgment, or attached exhibits. See Docs. 67, 68, 68-1.

Only in its response to Defendants' Motion for Summary Judgment does SFLA mention this pamphlet for the first time and argue, also for the first time, that it intends to produce similar pamphlets in the future, although SFLA does not itself call the pamphlet "express advocacy." See Doc. 76 at 3 ("Plaintiff has also distributed pamphlets asking readers to 'Vote "No"' on a specific amendment, which Defendants regard as express advocacy. Plaintiff intends to produce similar pamphlets in the future. Although Plaintiff intends these communications to advocate for the specific issues it cares about—abortion-related and pro-life issues—not to influence the outcomes of elections, Defendants believe such communications are subject to the statute." (citations omitted)). Defendants took no enforcement action regarding the pamphlet, and the existence of SDCL § 12-27-16 evidentially did not chill SFLA from issuing the pamphlet.

SFLA's Amended Complaint presents a First Amendment challenge to Defendants' ability to regulate SFLA's texts and mailers engaging in issue advocacy. The burden is on the plaintiff to establish standing at each phase of the litigation. See Carney v. Adams, 592 U.S. 53, 59–60 (2020). SFLA has neither relied on this pamphlet in its own argument for summary judgment, which was filed after the Defendants' motion and attachments, nor moved to amend or supplement its Amended Complaint in the approximate year between the 2024 election and Plaintiff's motion for summary judgment to base any part of the case on this pamphlet or its intent to distribute pamphlets of this kind in the future. Therefore, this Court will not address the Amendment G pamphlet in this Opinion and Order. See Singleton v. Ark. Hous. Auths. Prop. & Cas. Self-Insured Fund, Inc., 934 F.3d 830, 837 (8th Cir. 2019) ("[Although] the pleading requirements under the Federal Rules [of Civil Procedure] are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." (alterations in original) (citation omitted)); Young Am.'s Found. v. Kaler, 14 F.4th 879, 889 (8th Cir. 2021) (same).

committee." Id. § 12-27-16(1)(c). The disclosure statement requirement mandates those making expenditures subject to the disclaimer requirement "file an independent communication expenditure statement within forty-eight hours of the time that the communication is disseminated, broadcast, or otherwise published" with the South Dakota Secretary of State. Id. § 12-27-16(2). SFLA has not complied with these statutes when making its communications.

SFLA challenges both the disclaimer and disclosure statement requirements. The Amended Complaint argues that SDCL § 12-27-16 is facially overbroad in applying to SFLA's issue advocacy, Doc. 24 ¶¶ 56–62, the on-ad disclaimer requirement is a content-based rule that does not pass constitutional muster on its face or as applied to SFLA, id. ¶¶ 65–80, and the on-ad disclaimer requirement is facially void for vagueness, id. ¶¶ 82–92. SFLA seeks a declaratory judgment that SDCL §§ 12-27-16 and 12-27-1(11) are unconstitutional, an injunction prohibiting Defendants from enforcing SDCL § 12-27-16, and attorney's fees and costs. Doc. 24 ¶¶ a–f.

Defendants moved to dismiss, Doc. 22, and argued that SFLA lacks standing to bring the action, Doc. 23 at 16–23, and that, even if standing existed, the statute is constitutional, id. at 23–36. This Court granted the Defendants' motion to dismiss in part. Doc. 44. This Court dismissed the majority of SFLA's claims, finding two claims survived the motion to dismiss. Id. Defendants' motion to dismiss was denied "regarding the as-applied portion of Count II concerning whether SFLA receives a 'contribution' constitutionally subject to disclosure and the absence of 'off-ramps' for donors to avoid on-ad listing requirements." Id. at 44. In its motion to dismiss briefing, Defendants had raised that SFLA did not receive any "contributions" as defined in SDCL § 12-27-1(6) because the consideration must be made for an express advocacy purpose; therefore, Defendants argued, SFLA lacked standing. Id. at 12. This Court agreed that the challenged statute's subsections describe express advocacy, which this Court noted "SFLA disavows doing in

South Dakota." Id. at 13.  However, this Court did not dismiss SFLA's as-applied challenge as it concluded that Defendants' standing argument "may have merit but requires evaluating 'the purpose' of the contributions to SFLA . . . [which] is better done on cross motions for summary judgment." Id. at 13.

Both parties now move for summary judgment on the remaining questions.  Docs. 64, 67. In their motion, Defendants argue that SFLA lacks standing to challenge SDCL § 12-27-16 because the disclosure requirement only applies to express advocacy and SFLA is an entity that exclusively engages in issue advocacy.  Doc. 65 at 1, 6–11.  Alternatively, Defendants argue that the disclosure requirement survives exacting scrutiny and is therefore constitutional despite the lack of an off-ramp provision.  Id. at 11–21.  SFLA separately moves for summary judgment, but it does not address the standing issue.  Doc. 67.  Instead, SFLA argues that SDCL § 12-27-16 violates the First and Fourteenth Amendments, as applied to SFLA, because SDCL § 12-27-16 cannot survive exacting scrutiny.  Id.  Because SFLA has failed to set forth facts establishing an injury-in-fact to show standing to challenge the constitutionality of SDCL § 12-27-16, this Court grants Defendants' motion for summary judgment and dismisses the case without prejudice.  Even if SFLA had established standing, SDCL § 12-27-16 survives exacting scrutiny and is therefore constitutional.

## II.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party."  True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted).  There is a genuine issue of material fact if a

"reasonable jury [could] return a verdict for either party" on a particular issue.  <u>Mayer v. Countrywide Home Loans</u>, 647 F.3d 789, 791 (8th Cir. 2011).  A party opposing a properly made and supported motion for summary judgment must cite particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); <u>Gacek v. Owens & Minor Distrib., Inc.</u>, 666 F.3d 1142, 1145 (8th Cir. 2012).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." <u>Thomas v. Corwin</u>, 483 F.3d 516, 527 (8th Cir. 2007).  When there are cross motions for summary judgment, each party's motion must be evaluated independently with facts taken in the light most favorable to the nonmoving party to determine whether there is any genuine issue of material fact.  <u>See</u> <u>Wermager v. Cormorant Twp. Bd.</u>, 716 F.2d 1211, 1214 (8th Cir. 1983); <u>Fed. Ins. v. Great Am. Ins.</u>, 893 F.3d 1098, 1102 (8th Cir. 2018); <u>Rodriguez v. VanIperen</u>, 736 F. Supp. 3d 699, 711 (D.S.D. 2024).

## III.   Analysis

As "federal courts are courts of limited jurisdiction," this Court first considers Defendants' challenge to SFLA's standing.  <u>United States v. Afremov</u>, 611 F.3d 970, 975 (8th Cir. 2010).  As explained below, SFLA has failed to set forth specific facts to meet its burden to establish an injury in fact conferring standing for prospective First Amendment relief.  <u>See</u> <u>Young Am.'s Found.</u>, 14 F.4th at 887–88; <u>Animal Legal Def. Fund v. Reynolds</u>, 89 F.4th 1071, 1077 (8th Cir. 2024).

### A.   Standing

#### 1.   Standing Generally and Injury in Fact Requirement

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" <u>Murthy v. Missouri</u>, 603 U.S. 43, 56 (2024); <u>see also</u> <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 408 (2013).  Federal courts do not "operate as an open forum for citizens 'to

press general complaints about the way in which government goes about its business.'" FDA v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quoting Allen v. Wright, 468 U.S. 737, 760 (1984)). Courts implement this limit through different justiciability doctrines, including standing and ripeness. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).

Broadly speaking, the standing inquiry concerns whether the plaintiff is the appropriate party to bring a particular suit. Raines v. Byrd, 521 U.S. 811, 818 (1997); Flast v. Cohen, 392 U.S. 83, 99–100 (1968). The three requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged law, and (3) a likelihood that a favorable decision will redress the injury. All. for Hippocratic Med., 602 U.S. at 380; Animal Legal Def. Fund v. Vaught, 8 F.4th 714, 718 (8th Cir. 2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). Standing is jurisdictional, requiring a federal court to consider all standing defects, even those parties may overlook. See Young Am.'s Found., 14 F.4th at 887 (requiring the court raise the "threshold issue" of standing "sua sponte if need be" (cleaned up and citations omitted)).

To satisfy Article III standing, an injury in fact "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (cleaned up and citation omitted). A "concrete" injury means "that it must be real and not abstract." All. for Hippocratic Med., 602 U.S. at 381. A "particularized" injury means that it "must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." Id. (quoting Lujan, 504 U.S. at 560 n.1). "Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." Id. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Susan B. Anthony List, 573

10

U.S. at 158 (cleaned up and citation omitted); see also Minn. Chapter of Associated Builders & Contractors, Inc. v. Blissenbach, 155 F.4th 1015, 1020–21 (8th Cir. 2025) ("Because the [plaintiffs] allege specific conduct that the Act targets, and because state officials have not disavowed enforcing it, the [plaintiffs] have standing.").

In the First Amendment context, an injury may be too hypothetical or speculative to confer standing if the occurrence of proposed future conduct is uncertain. See Final Exit Network, Inc. v. Ellison, 370 F. Supp. 3d 995, 1010 (D. Minn. 2019) ("'Some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.'" (cleaned up) (quoting Lujan, 504 U.S. at 564)); Mo. Roundtable for Life v. Carnahan, 676 F.3d 665, 672 (8th Cir. 2012) ("A party cannot show an injury in fact by mere allegations of possible future injury." (internal quotations and citation omitted)). However, all prospective relief is not automatically too speculative in the First Amendment context because "[w]hen the alleged injury is a chill on constitutionally protected speech, the First Amendment gives a more 'lenient standing requirement' to pre-enforcement challenges." Animal Legal Def. Fund, 89 F.4th at 1077. The Eighth Circuit recognizes that

> [t]here are two types of injuries conferring standing for prospective First Amendment relief. The first occurs when a plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. The second occurs when a plaintiff self-censors.

Dakotans for Health v. Noem, 52 F.4th 381, 386 (8th Cir. 2022) (cleaned up and citations omitted). See also Animal Legal Def. Fund, 89 F.4th at 1077; Iowa Right to Life Comm., Inc. v. Tooker, 717 F.3d 576, 604 (8th Cir. 2013) (finding standing when "plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute" even when there is no "specific threat

11

of enforcement" (citation omitted)). "[W]hen a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists." <u>Alexis Bailly Vineyard, Inc. v. Harrington</u>, 931 F.3d 774, 778 (8th Cir. 2019); <u>see also</u> <u>Kohls v. Ellison</u>, No. 25-1300, 2026 WL 350923, at *2 (8th Cir. Feb. 9, 2026) ("Kohls's videos, labeled as parodies, are not deep fakes under the statute, so he is not injured by any threat of enforcement.").

The Supreme Court of the United States has recognized that the "second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" <u>All. for Hippocratic Med.</u>, 602 U.S. at 380 (citation omitted). Causation requires a plaintiff to show an "injury likely was caused or likely will be caused by the defendant's conduct." <u>Id.</u> at 382. "[T]he causation requirement screens out plaintiffs who were not injured by the defendant's action." <u>Id.</u> at 383. For causation, "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff." <u>Id.</u> at 385. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." <u>Id.</u> at 382. Where the defendant's action caused injury, redressability—the third element of standing—typically exists through injunctive action or an award of damages. <u>Id.</u> at 381.

A plaintiff bears the burden of establishing standing as of the time the lawsuit was brought and throughout the pendency of the case. <u>See</u> <u>Carney</u>, 592 U.S. at 59. "[S]tanding is not dispensed in gross," <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 431 (2021), but requires a plaintiff to "demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek," <u>Murthy</u>, 603 U.S. at 61 (cleaned up and citation omitted). "Because these requirements are 'an indispensable part of the plaintiff's case, each element must be supported in

the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation.[']" Young Am.'s Found., 14 F.4th at 887 (quoting Bernbeck v. Gale, 829 F.3d 643, 646 (8th Cir. 2016)).

"[A]t the summary judgment stage, [] a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts," Clapper, 568 U.S. at 412 (cleaned up and citation omitted), "which for purposes of the summary judgment motion will be taken to be true," to show there is no genuine dispute as to facts that attest its standing. Lujan, 504 U.S. at 561; Fed. R. Civ. P. 56(c). "Conversely, to defeat a defendant's motion for summary judgment on the same issue, the plaintiff must produce evidence showing the presence of a genuine issue regarding standing that would warrant resolution by trial." Minn. Chamber of Com. v. Choi, 765 F. Supp. 3d 821, 835 (D. Minn. 2025) (quoting Lugo v. City of Troy, 114 F.4th 80, 87–88 (2d Cir. 2024)). SFLA has faced no enforcement action for its activities and seeks forward-looking relief; SFLA thus must produce evidence showing the presence of a genuine issue regarding standing, that it faces an injury in fact, whether a credible threat of prosecution or actual self-censoring. Dakotans for Health, 52 F.4th at 386; Clapper, 568 U.S. at 412.

In its 2024 Opinion and Order Granting the Motion to Dismiss in Part, this Court noted that the absence of any enforcement action against SFLA, especially in light of the two recent Supreme Court standing decisions in Murthy and Alliance for Hippocratic Medicine, casts doubt on SFLA's assertion of standing. See Doc. 44 at 13. As of 2026, SFLA has not faced any enforcement action.[4] However, Defendants have not signed a stipulation for a permanent injunction against prosecution or formally disavowed any intention of enforcing the law against

---

[4] Neither parties' statement of undisputed material facts included evidence of an initiated or threatened enforcement action. See Docs. 73, 75.

SFLA by testimony or affidavit.[5] Therefore, although South Dakota may not have had any present intention of enforcing its disclosure requirements against SFLA for its advocacy activities, "there is nothing that prevents the State from changing its mind," Vt. Right to Life Comm. v. Sorrell, 221 F.3d 376, 383 (2d Cir. 2000), so this Court will evaluate whether SFLA has established either of the two injuries-in-fact conferring standing for prospective First Amendment relief as outlined in Dakotans for Health. See 52 F.4th at 386. As Defendants have requested summary judgment on the standing issue, and SFLA has not raised the issue in its motion, the facts on standing must be viewed in the light most favorable to SFLA.

## 2. Absence of Credible Threat of Prosecution

To establish a credible threat of prosecution at the summary judgment stage, SFLA "must set forth by affidavit or other evidence specific facts," Clapper, 568 U.S. at 412 (cleaned up and quoting Lujan, 504 U.S. at 561), "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder," Dakotans for Health, 52 F.4th at 386; see also Kohls, 2026 WL 350923, at *2. SFLA has not established that it faces a credible threat of prosecution. SFLA has only set forth specific facts detailing its intention to engage in issue advocacy, as well as its intention to solicit contributions to support its issue advocacy, but the challenged statute only mandates disclosure of the top five donors who have contributed to further an entity's express advocacy. See Dakotans for Health, 52 F.4th at 386; SDCL §§ 12-27-1(6), 12-27-16.

SDCL § 12-27-1(9), defines the phrase "expressly advocate" to mean communications that advocate for a particular election result by "using explicit words of advocacy" like "vote, re-elect,

---

[5] This Court refers the parties to its discussion of District of South Dakota and Eighth Circuit cases where the First Amendment violation claim was dismissed after the government defendant formally disavowed any intention of prosecution. See Doc. 44 at 13–17 (collecting cases).

support, cast your ballot for, reject, and defeat." SDCL § 12-27-1(9)(a). A communication is also express advocacy under South Dakota statute if the communication is one that,

> If taken as a whole and with limited reference to external events, such as the proximity to the election, may only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question because:
>
> (i)     The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
>
> (ii)    Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidates or public office holders, or the placement of a ballot question on the ballot or the adoption or defeat of any ballot question or encourages some other kind of action[.]

§ 12-27-1(9)(b). This Court previously found that under SDCL § 12-27-1(9), SFLA's messaging that is the subject of the Amended Complaint does not qualify as express advocacy under South Dakota law. Doc. 44 at 10.

As previously discussed, the challenged statute, SDCL § 12-27-16, requiring on-ad disclaimers and disclosure statements does not mention express advocacy, distinguish between types of advocacy, or limit the statute's application only to those communications that "expressly advocate" for a candidate or ballot issue. See SDCL § 12-27-16. SDCL § 12-27-16 specifically requires the disclosure of an entity's "'Top Five Contributors,' including a listing of the names of the five persons making the largest *contributions* in aggregate to the entity during the twelve months preceding that communication." SDCL § 12-27-16(1)(c) (emphasis added). However, to qualify as a "contribution," as defined in SDCL § 12-27-1(6), the consideration must be made for the purpose of influencing:

> (a) The nomination, election, or re-election of any person to public office; or
> (b) The placement of a ballot question on the ballot or the adoption or defeat of any ballot question submitted.

SDCL § 12-27-1(6). As discussed previously, these subsections describe express advocacy, which SFLA disavows doing in South Dakota. See Doc. 44 at 13.

The law governing disclosure requirements does not itself differentiate between express and issue advocacy. See Citizens United v. FEC, 558 U.S. 310, 368–69 (2010) (rejecting Citizens United's contention "that the disclosure requirements must be limited to speech that is the functional equivalent of express advocacy"). The South Dakota statute section at issue, however, does and applies just to contributions for the purpose of sponsoring express advocacy. See SDCL §§ 12-27-16(1)(c), 12-27-1(6). Therefore, to determine whether SFLA has standing to bring an as-applied challenge to SDCL § 12-27-16 requires evaluating "the purpose" of the contributions to SFLA. SFLA's standing to bring this as-applied challenge depends at the summary judgment stage on whether it has set forth specific facts demonstrating its solicitation of contributions for the purpose of express advocacy, the failure to disclose would be prohibited by SDCL § 12-27-16.

In its opposition to Defendants' motion for summary judgment, SFLA argues it has standing because the purpose of its advocacy is subject to the state's subjective determination, and because the state could conclude its advocacy is a type of express advocacy, it suffers an injury-in-fact. Doc. 76 at 1–3. Referring to its exhibits and declaration attached to its Motion for Summary Judgment, Doc. 67, SFLA proposes a double-layered hypothetical: "The state *may conclude* that encouraging recipients to urge candidates and legislators to sign a pro-life pledge and support pro-life legislation implies that those recipients should vote for candidates that do so and against those that do not . . . . therefore, the state *may attempt* to enforce the statute against Plaintiff." Doc. 76 at 2 (emphasis added).

In its Statements of Undisputed Material Facts and attachments, SFLA included a declaration from its treasurer that SFLA "engages in issue advocacy" and works to "achieve issue-

16

specific results." Doc. 68-1 ¶ 3.    SFLA's treasurer averred that, "SFLA limits its voter communications to candidates' positions on abortion related issues and to encourage activism for pro-life policies; it does not tell voters which candidate to vote for or against." Doc. 68-1 ¶ 4; Doc. 73 ¶ 9. SFLA's treasurer described voter communications such as text messages and mailers and attaches copies of each to the declaration. See Doc. 68-1 ¶¶ 6–8, 5–13. SFLA's treasurer declared that "SFLA's future expenditures . . . will mention candidates and elected officials." Id. ¶ 9; see also Doc. 73 ¶ 10 ("The SFLA has engaged in communications concerning candidates and office holders in South Dakota . . . and will continue to make similar communications costing more than $100 in South Dakota in the future."). Neither SFLA's treasurer's declaration, SFLA's Statement of Undisputed Material Facts, nor attached texts and mailers mention ballot initiatives—all concern SFLA's views on the pro-life bona fides of candidates and elected officials. Within the specific texts and mailers SFLA submitted in support of its motion for summary judgment, SFLA describes candidates and elected officials' stances on reproductive health policies, but SFLA does not expressly say for whom to vote. See Doc. 68-1 at 5–13.[6] SFLA has objected to certain "facts" within Defendants' Statement of Materials Facts discussing their texts and mailers as forms of issue advocacy by arguing that classifying the materials as express or issue advocacy is "a legal conclusion, not a statement of fact." See Doc. 75 ¶¶ 9, 11. But SFLA has resubmitted the same materials analyzed when deciding the motion to dismiss, leaving no justification for this Court to reach any different legal conclusion than that SFLA's messaging in its texts and mailers at issue

---

[6] In its Response, SFLA also cites Exhibit 9 to Defendants' Motion for Summary Judgment, a pamphlet stating "Vote No." Doc. 76 at 3. SFLA asserts that it "intends to produce similar pamphlets in the future," and "[a]lthough Plaintiff intends these communications to advocate for the specific issues it cares about—abortion-related and pro-life issues—not to influence the outcomes of elections, Defendants believe such communications are subject to the statute." Id. For the reasons explained in Footnote 3, supra, this argument is not properly raised on summary judgment.

17

in the Amended Complaint does not qualify as express advocacy. See Doc. 44 at 9–10 (finding that SFLA's messaging, through its mailings and texts, "does not qualify as express advocacy under South Dakota law" when ruling on the motion to dismiss claims in the Amended Complaint).

Although SFLA in fact "accepts donations that are earmarked by donors for certain uses," SFLA set forth no facts to support that it solicits contributions *for the purpose* of express advocacy, a crucial component of its ability to show standing to challenge this South Dakota statute. See Doc. 73 ¶¶ 15–17; Doc. 68-1 ¶¶ 10–12. SFLA's attachments and facts reiterate and reinforce its earlier arguments that it engages in and intends to engage in issue advocacy that avoids "tell[ing] voters which candidate to vote for or against" in its future "communications concerning candidates and office holders in South Dakota." Doc. 68-1 ¶ 4–5; Doc. 73 ¶ 9–10; see also Doc. 77 at 4–5 (listing SFLA's allegations in its Amended Complaint and its representations in earlier filings on its engagement in issue advocacy). Instead, SFLA merely objects to Defendants' statements that its solicitation messaging does not expressly advocate for a particular candidate or ballot measure as defined in SDCL § 12-27-1(9) as a legal conclusion and not a statement of fact. See Doc. 75 ¶¶ 12–13. The solicitation messaging at issue in the Amended Complaint, which itself is undisputed by the parties, see id., is not express advocacy because the messaging encourages recipients to donate to "cover the cost of an entire Lobby Day" and to "send[] young pro-lifers right to your politicians' office to speak to them on your behalf," and state that SFLA is "committed to abolishing abortion in America." Doc. 66-6; 66-8.

Even viewing facts in the light most favorable toward standing, SFLA has failed to set forth specific facts establishing that contributions are made to SFLA for the purpose of engaging in express advocacy within the purview of SDCL § 12-27-1(6). See Clapper, 568 U.S. at 412 (requiring "specific facts" to avoid summary judgment on the standing issue). If SFLA does not

18

solicit contributions for the purposes of express advocacy, as defined by SDCL § 12-27-1(6), it does not face a credible threat of prosecution for failing to disclose the top five donors of those contributions, made to support express advocacy, under SDCL § 12-27-16 because its activity falls outside of the regulation of the statute. See Minn. Citizens Concerned for Life, Inc. v. Kelley, 427 F.3d 1106, 1110 (8th Cir. 2005) (affirming district court's finding on summary judgment that organization lacked standing to challenge Minnesota statute because the statute subsections did not apply to groups engaged in "pure issue advocacy," which the plaintiff organization claimed to do). Cf. Animal Legal Def. Fund, 89 F.4th at 1079 (concluding plaintiffs lacked standing to challenge provision that chilled conduct they had not shown a desire to engage in)[7]; Young Am.'s Found., 14 F.4th at 888 ("Accordingly, a plaintiff does not have standing to challenge a policy that was not applied to it."); Iowa Right To Life Comm., Inc., 717 F.3d at 585 ("IRTL claims its 'major purpose is not and will never be the nomination or election of candidates.' It does not face a realistic danger that Iowa will deem it a PAC or permanent organization."). Because SFLA bears the burden to establish standing throughout the case, Carney, 592 U.S. at 59, and it has failed to establish "specific facts" constituting an intention to engage in a course of conduct arguably

---

[7] The Eighth Circuit denied standing at the pleadings stage for one count in Animal Legal Defense Fund because the plaintiffs had not shown a desire to engage in the activity proscribed by the challenged statute:

> As to Plaintiffs' standing to challenge the Place Provision, we need not decide whether Plaintiffs have a First Amendment right to place cameras on trespassed property because Plaintiffs have not pled any facts suggesting they have historically placed cameras or plan to place cameras on trespassed property. Plaintiffs only plead they *use* cameras, not that they *place* cameras. Plaintiffs cannot say the Place Provision chills them from engaging in their desired conduct because they have shown no desire to place cameras. Because the Place Provision does not injure Plaintiffs' speech, they lack Article III standing to challenge it.

89 F.4th at 1079.

affected with a constitutional interest, but proscribed by South Dakota statutes, or a credible threat of prosecution thereunder, SFLA does not have standing to bring an as-applied challenge based on this prong of the Dakotans for Health standing test, 52 F.4th at 386. Clapper, 568 U.S. at 412 (quoting Lujan, 504 U.S. at 561).

### 3. Absence of Self-Censorship

As this Court previously noted, SFLA has not alleged that it will stop engaging in its advocacy because of the statute and, therefore, has not alleged that its own speech is chilled. See Dakotans for Health, 52 F.4th at 386 (noting "[s]elf-censoring occurs when a plaintiff alleges it would like to engage in arguably protected speech, but that it is chilled from doing so by the existence of the statute" (cleaned up and citation omitted)); Doc. 44 at 19–20. However, this Court declined to dismiss the Amended Complaint in full because enough was alleged to suggest that SFLA may be able to challenge the statute's chilling effect on its donors, see Ams. for Prosperity, 594 U.S. at 615–19 (allowing the organization to bring an action on the basis of chilled speech when the statute discouraged the organization's donors from engaging in First Amendment activity). After all, SFLA had alleged South Dakota's disclosure regime threatens chilling the association rights of its donors because donors may fear various forms of reprisals or retaliation for its association with SFLA. Doc. 24 ¶¶ 6, 40; Doc. 44 at 19–20. This Court reasoned that SFLA might have standing to challenge the top-five-contributors disclaimer requirement of SDCL § 12-27-16 for chilling its donors' protected rights as long as it meets "the burden of proof, i.e., with the manner and degree of evidence required" at the particular stage of the litigation. Doc. 44 at 19–20; Young Am.'s Found., 14 F.4th at 887 (quoting Bernbeck, 829 F.3d at 646); Ams. for Prosperity, 594 U.S. at 616. However, SFLA has failed to advance facts, even taken as true, of

any chilling effect on donors, and therefore, it cannot rely on self-censorship to establish an injury in fact, and by extension, standing.

SFLA nonetheless argues that the statute chills the speech of its donors, and therefore, it suffers an injury in fact. Doc. 76 at 3–5. Citing cases such as NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958), SFLA argues, "When SFLA's donors are forcibly outed, their freedom of association is restricted—in other words, their speech [is] chilled." Id. at 3. It argues this risk is heightened in the twenty-first century because of the "increased ability for people to gather sensitive information about someone and post it publicly." Id. at 3–4 (citing Ams. for Prosperity, 594 U.S. at 617).

The Supreme Court has "recognized that compelled disclosures may impose an unconstitutional burden on the freedom to associate in support of a particular cause." McConnell v. FEC, 540 U.S. 93, 197–98 (2003), (overruled on other grounds by Citizens United, 558 U.S. 310). A disclosure statute "would be unconstitutional as applied to an organization if there were a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." Citizens United, 558 U.S. at 370 (citing McConnell, 540 U.S. at 198). For example, in NAACP v. Alabama ex rel. Patterson, the Court found that the First Amendment prohibited Alabama from compelling the disclosure of NAACP's membership lists in part because, during the civil rights movement, NAACP "[had] made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members [had] exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." 357 U.S. 449, 462 (1958). In more recent years, although the Supreme Court has acknowledged how the Internet transforms the ability of the average person to discover more information about a disclosed member or donor, it still relies upon evidence

introduced by the challenger party when finding a "disclosure requirement 'creates an unnecessary risk of chilling' in violation of the First Amendment." Ams. for Prosperity, 594 U.S. at 616–17 ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence."). See also Citizens United, 558 U.S. at 370–71 (rejecting plaintiff's assertion that disclosure requirements could chill donations to an organization by exposing donors to retaliation, noting that plaintiff "has offered no evidence that its members may face similar threats or reprisals," and finding the disclosure requirements constitutional given that "there has been no showing that, as applied in this case, these requirements would impose a chill on speech and expression").

However, a challenger's representation that its organization stands for a publicly disfavored view is insufficient to establish an injury in fact without more. The Supreme Court has rejected the contention that "disclosure requirements could not constitutionally be applied to minor parties and independent candidates because the Government's interest in obtaining information from such parties was minimal and the danger of infringing their rights substantial" after finding "no evidence that any party had been exposed to economic reprisals or physical threats as a result of the compelled disclosures." McConnell, 540 U.S. at 198 (comparing Buckley v. Valeo, 424 U.S. 1, 69–70 (1976) with NAACP, 37 U.S. 449).

SFLA has set forth minimal facts about its donors generally, and none that show "a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." Citizens United, 558 U.S. at 370 (citing McConnell, 540 U.S. at 198). SFLA has only submitted facts that establish (1) it "accepts donations that are earmarked by donors for certain uses," (2) "[a]s a rule, SFLA does not disclose the names of its donors unless required to by law, because many of SFLA's donors find this anonymity important, or even vital,

22

to their giving," and (3) "[i]f SFLA were required to disclose its top five donors in a given year, even if those donors have made donations earmarked . . ., donors may reduce the amount of their donations or stop donating entirely." Doc. 73 ¶¶ 15–17 (citing Doc. 68-1 ¶¶ 10–12). Even taking the third statement in the light most favorable to SFLA, that donors "may reduce" their future donations, SFLA has only set forth one hypothetical impact of disclosure that is uncorroborated by any additional evidence, let alone evidence showing a reasonable probability that the possible reduction in donations would *be caused* by threats, harassment, or reprisals stemming from South Dakota's disclosure requirements.  The absence of any evidence of donor retaliation is further highlighted by Plaintiff's responses to Defendants' interrogatories, which Defendants attached to their Statement of Undisputed Facts. Doc. 66-2. When asked for the factual basis of or documents relating to its allegations concerning how South Dakota's disclosure requirements threaten to chill the association rights of its donors, SFLA referred Defendants back to the allegations in the Amended Complaint, indicated that SFLA was not aware of any documents responsive to the Defendants' request, and responded, "Investigation continues." See id. at 7, 10–11 (listing SFLA's Response to Interrogatory No. 6, Request No. 10, Request No. 11).

SFLA's remaining arguments likewise do not establish standing.  See Doc. 76 at 4–5. SFLA argues that disclosure regimes that only indirectly chill First Amendment speech will fail exacting scrutiny if not narrowly tailored to a compelling government interest. Id. at 4. But SFLA must first establish standing to bring this challenge by showing one of the two injuries detailed in Dakotans for Health.  See 52 F.4th at 386. SFLA concludes its argument on its donors' chilled speech injury by citing Citizens United, namely, "[a] law that 'chills speech can and must be invalidated where its facial invalidity has been demonstrated.'" Doc. 76 at 4–5 (citing 558 U.S. at

23

312). This Court already has dismissed SFLA's facial challenge to SDCL § 12-27-16, and therefore, this is not applicable to the case at hand. See Doc. 44.

Although SFLA has alleged South Dakota's disclosure regime threatens chilling the association rights of its donors because donors may fear various forms of reprisals or retaliation for its association with SFLA, Doc. 24 ¶¶ 6, 40, mere allegations are insufficient to establish an injury-in-fact at the summary judgment stage. Clapper, 568 U.S. at 412 (cleaned up and quoting Lujan, 504 U.S. at 561) ("[A]t the summary judgment stage, [] a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts."). Cf. Kohls, 2026 WL 350923, at *3 ("Kohls did not present evidence that others were deterred from sharing the video or that he lost income from any such reduction in sharing. A plaintiff cannot establish standing based merely on an unsupported assumption that some users of YouTube or X might decline to share a video because of the Minnesota statute."). SFLA "cannot establish standing 'simply by claiming that [it] experienced a "chilling effect" that resulted from a governmental policy that does not regulate, constrain, or compel any action on [its] part.'" Iowa Right to Life Comm., Inc., 717 F.3d at 587 (alteration in original) (quoting Clapper, 568 U.S. at 419). As SFLA bears the burden to establish standing throughout the case, Carney, 592 U.S. at 59, and it has failed to establish "specific facts" that the top-five-contributors disclaimer requirement of SDCL § 12-27-16 chills its donors' protected rights, SFLA does not have standing to bring an as-applied challenge based on this second possible injury-in-fact of the Dakotans for Health test, 52 F.4th at 386 ("The second occurs when a plaintiff self-censors."). Clapper, 568 U.S. at 412 (quoting Lujan, 504 U.S. at 561).

SFLA has produced no facts, even viewing the record in the light most favorable to SFLA, to establish either of the "two types of injuries conferring standing for prospective First

24

Amendment relief." <u>Dakotans for Health</u>, 52 F.4th at 386. SFLA thus has failed to establish an injury-in-fact, and therefore does not have standing to bring this as-applied challenge. <u>All. for Hippocratic Med.</u>, 602 U.S. at 380; <u>Animal Legal Def. Fund</u>, 8 F.4th at 718 (citing <u>Lujan</u>, 504 U.S. at 560–61); <u>Lujan</u>, 504 U.S. at 566 ("Standing is not 'an ingenious academic exercise in the conceivable,' but as we have said requires, at the summary judgment stage, a factual showing of perceptible harm." (quoting <u>United States v. Students Challenging Regul. Agency Procs. (SCRAP)</u>, 412 U.S. 669, 688 (1973)). This Court accordingly dismisses SFLA's remaining claims without prejudice. <u>See</u> <u>Young Am.'s Found.</u>, 14 F.4th at 891 (dismissing without prejudice after finding appellants lacked standing).

## B. Constitutionality of SDCL § 12-27-16

Even if SFLA had standing, this Court would still grant summary judgment on the remaining claims because SDCL § 12-27-16 survives exacting scrutiny and is therefore constitutional.

### 1. Defendants' Motion for Summary Judgment

SFLA has brought an as-applied challenge to SDCL § 12-27-16 seeking the issuance of a permanent injunction enjoining Defendants from enforcing the on-ad disclaimer requirement against it. Doc. 24 ¶¶ 80–81. This Court dismissed all but SFLA's as-applied challenge to SDCL § 12-27-16 due to the absence of a so-called "off ramp" provision. Doc. 44 at 44.[8] In addition to their lack of standing argument, Defendants alternatively move for summary judgment arguing that an off-ramp provision is not necessary for SDCL § 12-27-16 to survive exacting scrutiny

---

[8] Some on-ad donor disclaimer statutes offer off ramps for donors who wish to avoid having their names disclosed by allowing them to donate less than the triggering value or by opting to direct their donations not to apply to electioneering communications. <u>See</u> <u>Gaspee Project v. Mederos</u>, 13 F.4th 79, 92 (1st Cir. 2021). South Dakota's statute lacks any such so-called "off ramp."

because of South Dakota's important interest in an informed electorate and because the provisions of SDCL § 12-27-16 substantially relate to that purpose and are narrowly tailored. Doc. 65 at 11–21. SFLA opposes the Defendants' motion for summary judgment and argues that the lack of an off-ramp provision means that the on-ad disclosure rule is not narrowly tailored, and therefore, SDCL § 12-27-16 cannot survive exacting scrutiny. Doc. 76 at 5–9.

### a. As-Applied Challenge Standard

"An as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case." United States v. Perez, 145 F.4th 800, 804 (8th Cir. 2025) (cleaned up and citation omitted). See also Minn. Chamber of Com., 765 F. Supp. 3d at 845–46 (citing United States v. Veasley, 98 F.4th 906, 909 (8th Cir. 2024)). "The challenge is not 'that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" United States v. Lehman, 8 F.4th 754, 757 (8th Cir. 2021) (quoting United States v. Adams, 914 F.3d 602, 605 (8th Cir. 2019)). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." Phelps-Roper v. Ricketts, 867 F.3d 883, 896 (8th Cir. 2017) (quoting Republican Party of Minn., Third Cong. Dist. v. Klobuchar, 381 F.3d 785, 790 (8th Cir. 2004)). A party "generally cannot prevail on an as-applied challenge without showing that the law has in fact been . . . unconstitutionally applied to" it. McCullen v. Coakley, 573 U.S. 464, 485 n.4 (2014). An as-applied challenge to a disclosure law "would be available if a group could show a reasonable probability that disclosure of its contributors' names will subject them to threats,

harassment, or reprisals from either Government officials or private parties." Citizens United, 558 U.S. at 367 (cleaned up and citation omitted).

In Count II of its Amended Complaint, SFLA does not specifically allege facts concerning how the statute has been unconstitutionally applied to it but alleges an absence of narrow tailoring in part because South Dakota requires nonprofits to disclose their donors in advocacy communications but "does not require on-ad donor disclaimer by candidates, political action committees, political parties, or ballot measure committees." See Doc. 24 ¶ 75 (describing the scope of the statute), ¶ 80 ("South Dakota's law violates the First Amendment, incorporated against South Dakota through the Fourteenth Amendment, on its face and as applied to the communication of Students for Life Action."). But in its opposition to Defendants' Motion for Summary Judgment, SFLA does not "ask[] the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case," Perez, 145 F.4th at 804, but continues to argue generally about the constitutionally of a statute in line with its earlier, now-dismissed, facial challenge, see Doc. 76 at 5–9 (citing no facts and making no arguments about how the statute is unconstitutional as-applied to SFLA). This may be in part because Defendants have not enforced this law against SFLA for its issue advocacy, a fact which has affected SFLA's ability to show standing as discussed above. However, even if SFLA had been able to show that it has standing to bring this as-applied challenge, viewing the evidence in the light most favorable to SFLA, summary judgment is proper as the Defendants have shown there is no genuine dispute as to any material fact and they are entitled to judgment on the constitutionality of SDCL § 12-27-16 as a

matter of law.  True, 612 F.3d at 679 (citation omitted); Fed. R. Civ. P. 56(a); see also Doc. 44 (explaining grounds for prior dismissal).

### b.  Exacting Scrutiny Standard

As noted in the last Opinion and Order, courts routinely uphold disclosure laws like the one challenged in this case when they satisfy exacting scrutiny.  See Citizens United, 558 U.S. at 366–67 (applying exacting scrutiny to disclaimer and disclosure requirements).  Under exacting scrutiny, the state has the burden to show the restriction "employs means closely drawn [to advancing the state interest] to avoid unnecessary abridgement of First Amendment freedoms." Jones v. Jegley, 947 F.3d 1100, 1105 (8th Cir. 2020) (cleaned up and citation omitted).  In other words, the state must show that there is "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." Ams. for Prosperity, 594 U.S. at 607 (quoting Doe v. Reed, 561 U.S. 186, 196 (2010)).  "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Id. at 608.  This means the court will "require a fit that is not necessarily perfect, but reasonable." Id. at 609 (quoting McCutcheon v. FEC, 572 U.S. 185, 218 (2014)).

### 1)  Important Informational Interest

The Supreme Court has recognized such an important interest includes "providing the electorate with information" about the sources of spending behind political speech.  Citizens United, 558 U.S. at 367 (quoting Buckley, 424 U.S. at 66).  When concurring in Doe v. Reed, Justice Scalia wrote, "Our Nation's longstanding traditions of legislating and voting in public refute the claim that the First Amendment accords a right to anonymity in the performance of an

act with governmental effect." 561 U.S. 186, 221 (2010) (Scalia, J., concurring).[9] Because groups can finance political election-related speech "while hiding behind dubious and misleading names," disclaimers and disclosures help citizens "make informed choices in the political marketplace." Citizens United, 558 U.S. at 367 (cleaned up and citations omitted). Such disclosures also deter corruption and expose large contributors and expenditures to the light of day. Buckley, 424 U.S. at 67.

Government interests in "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent by the candidate," "deter[ring] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity," and "gathering the data necessary to detect violations of the contribution limitations" can be sufficiently important to justify disclosure requirements. Buckley, 424 U.S. at 66–67; see also Citizens United, 558 U.S. at 369 (determining the "information interest alone is sufficient to justify application of" the challenged disclaimer and disclosure requirements); Gaspee Project, 13 F.4th at 88 (finding a state's "interest in an informed electorate is sufficiently important to satisfy the first imperative of exacting scrutiny"). SFLA has conceded that South Dakota has a sufficiently important government interest in informing its voters of who is financing election-

---

[9] Justice Scalia believed the public nature of lawmaking to be critical to democracy:

> There are laws against threats and intimidation; and harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed. For my part, I do not look forward to a society which, thanks to the Supreme Court, campaigns anonymously (McIntyre) and even exercises the direct democracy of initiative and referendum hidden from public scrutiny and protected from the accountability of criticism. This does not resemble the Home of the Brave.

Doe, 561 U.S. at 228 (Scalia, J., concurring).

related speech. Doc. 76 at 5; see also Doc. 67 at 9. Therefore, this Court will focus its analysis on whether the provisions of SDCL § 12-27-16 substantially relate to that interest in an informed electorate and whether they are narrowly tailored.

### 2) Substantial Relation to an Important Government Interest

Exacting scrutiny "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' interest." Citizens United, 558 U.S. at 366–67 (citing Buckley, 424 U.S. at 64). "To withstand this scrutiny, 'the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.'" Doe, 561 U.S. at 196 (quoting Davis v. FEC, 554 U.S. 724, 744 (2008)). "In refining its articulation of exacting scrutiny, the Americans for Prosperity Court heightened this requirement, emphasizing that '[i]n the First Amendment context, fit matters.'" Gaspee Project, 13 F.4th at 85 (quoting 594 U.S. at 609). As noted above, exacting scrutiny "require[s] a fit that is not necessarily perfect, but reasonable," and "[a] substantial relation is necessary but not sufficient to assure that the government adequately considers the potential for First Amendment harms before requiring" donor disclosure. Ams. for Prosperity, 594 U.S. at 609 (quoting McCutcheon, 572 U.S. at 218).

In Citizens United, the Supreme Court found that the burden imposed by the on-ad disclaimer required by the Bipartisan Campaign Reform Act of 2002 was substantially related to the important government interest in providing information to the electorate because the disclaimers directly provide the ads' audience with information and "'insure that the voters are fully informed' about the person or group who is speaking." Citizens United, 558 U.S. at 368 (citing Buckley, 424 U.S. at 76). In addition, "[a]t the very least, the disclaimers avoid confusion by making clear that the ads are not funded by a candidate or political party." Id. Following Citizens United, other courts applying this standard in challenges to disclosure requirements have

similarly found that the prompt provision of information to voters about the source of funding for political advertisements substantially relates to the sufficiently important interest of an informed electorate and are not unduly burdensome. See Smith, 614 F. Supp. 3d at 685–86 ("While voters have access to donor information through the required disclosures to the APOC, the on-ad placement of some of that information provides a far more efficient and effective form of disclosure . . . . Given the modest nature of the burden imposed by the on-ad top-three-donor disclaimer requirement and the fact that exacting scrutiny does not require that the government use the least restrictive means possible, there is a sufficient relationship between the government's informational interest and the on-ad top-three-donor disclaimer requirement to withstand constitutional scrutiny."); Rio Grande Found., 727 F. Supp. 3d at 1006–09 (noting that the statute was substantially related to New Mexico's important informational interest in part because it "target[s] ads that are 'published and disseminated to the relevant electorate in New Mexico' . . . [and] thus focuses on disclosures on those funders of expenditures designed to influence the relevant electorate" (quoting N.M. Stat. Ann. § 1-19-26(N)(3)(c))); No on E v. Chiu, 85 F.4th 493, 505–06 (9th Cir. 2023) (discussing how "committees often obscure their actual donors through misleading and even deceptive committee names" and concluding "[b]ecause the interest in learning the source of funding for a political advertisement extends past the entity that is directly responsible, the challenged ordinance is substantially related to the governmental interest in informing the electorate"); Gaspee Project, 13 F.4th at 85–86 (reviewing how the "compelling interest in identifying the speakers behind politically oriented messages . . . is especially true in the age of new media, given the proliferation of speakers in the marketplace of ideas" and concluding "consequently, reasonable disclosure regimes enable[] the electorate to make informed

decisions and give proper weight to different speakers and messages." (cleaned up and citations omitted)).

Defendants assert that "South Dakota's important interest in an informed electorate is substantially related to the requirements of SDCL [§] 12-27-16" because "on-ad disclosure laws are an effective method of informing the public by notifying the voters who is truly responsible for a message." Doc. 65 at 20 (citing Ctr. for Ariz. Pol'y Inc. v. Ariz. Sec'y of State, 560 P.3d 923, 935 (Ariz. Ct. App. 2024); Smith v. Helzer, 95 F.4th 1207, 1212, 1216 (9th Cir. 2024); Gaspee Project, 13 F.4th at 83, 88, 95–96; No on E, 85 F.4th at 506). SFLA does not oppose Defendants' argument on substantial relation, instead focusing on exacting scrutiny's narrowly tailored prong. See Doc. 76 at 5–12 (arguing that the on-ad disclosure rule is not narrowly tailored and omitting any argument on substantial relation); see also Doc. 67 at 9–10 (same). SFLA has not produced any evidence to support an argument that the law is unduly burdensome upon it or its donors. See Smith, 614 F. Supp. 3d at 679 (highlighting how Plaintiffs had "fail[ed] to provide evidence . . . to support their assertion that compliance has been burdensome or onerous" before concluding that the donor disclosure requirement substantially related to Alaska's important informational interest). In line with other courts discussing this factor, this Court finds that South Dakota's important interest in an informed electorate is substantially related to an on-ad disclosure requirement because requiring the donor information to appear on the ad is an effective method of informing the public by notifying the voters instantaneously who is responsible for a message. See Smith, 614 F. Supp. 3d at 685–86; Gaspee Project, 13 F.4th at 85–86; No on E, 85 F.4th at 506.

### 3) Narrowly Tailored

"[A] substantial relation to an important interest is not enough to save a disclosure regime that is insufficiently tailored." Ams. for Prosperity, 594 U.S. at 609. However, exacting scrutiny

32

does not require "the least restrictive means of achieving that end." Id. at 610.  Defendants assert that SDCL § 12-27-16 is narrowly tailored to South Dakota's informational interest "[r]egardless of an off-ramp provision" because similar state statutes have been upheld under exacting scrutiny. Doc. 65 at 20–21 (citing Smith, 95 F.4th at 1221; No on E, 85 F.4th at 510; Del. Strong Families v. Att'y Gen. of Del., 793 F.3d 304, 310 (3d Cir. 2015)).  Plaintiffs counter that "[t]he volume of statutes that Defendants present with some sort of minimum triggering value and/or opt-[out] provision speaks to the extreme nature of South Dakota's law." Doc. 76 at 9.  However, SFLA only raises the following challenges: SFLA argues that the on-ad disclosure requirement in SDCL § 12-27-16 is not narrowly tailored because (1) "it contains no triggering value, allowing the disclosure to apply to any monetary value";[10] (2) there is no opt-out process, or "off-ramp" provision, "meaning that a donor's information could appear on an advertisement that he or she does not even agree with"; and (3) there are no time limitations on when disclosure is required. Id.  SFLA does not support these arguments with specific facts demonstrating how this statute unconstitutionally affects its donors. See Doc. 76.

This Court already has dismissed SFLA's facial challenges to SDCL § 12-27-16 concerning whether the statute was narrowly tailored because of its absence of temporal limitations, low spending thresholds, disclosure statement requirements, and provisions regarding public office holders and issue advocacy. See Doc. 44 at 27.[11]  This Court explained that "SFLA

---

[10] In its Amended Complaint and its arguments on Defendants' Motion to Dismiss, SFLA previously focused on raising a facial overbreadth claim for the statute's $100 spending threshold. Now, SFLA has raised what appears to be a facial challenge to the absence of a minimum donation to trigger disclosure. SDCL § 12-27-16 only requires the disclosure of the entity's top five donors, but that requirement is not tied to any minimum amount donated.

[11] In its argument on the statute's absence of temporal limitations, SFLA raised that the window of time during which speech is subject to South Dakota's disclosure regime is longer than those upheld in other states. Doc. 44 at 31.  However, this Court concluded that "nowhere in case law

ha[d] not demonstrated it is entitled to relief on its facial overbreadth claim for the statute's $100 spending threshold," and "to the extent SFLA present[ed] an as-applied challenge by alleging that its communications cost slightly more than $100, this challenge [was also] dismissed." Id. at 33. Given that this Court has already considered and rejected SFLA's facial challenge concerning time limitations within the statute, the remaining analysis will focus on whether SDCL § 12-27-16 is narrowly tailored despite the lack of a minimum donation threshold or an off-ramp provision.

Relatively few cases address election disclosure law concerning the constitutionality of on-ad disclaimers. See, e.g., Citizens United, 558 U.S. at 366–71; Smith, 614 F. Supp. 3d at 685–86, aff'd, 95 F.4th 1207; San Franciscans Supporting Prop B v. Chiu, 604 F. Supp. 3d 903, 905, 911 (N.D. Cal. 2022), aff'd sub nom. No on E, San Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu, 62 F.4th 529 (9th Cir. 2023), and aff'd sub nom. No on E, 85 F.4th 493. In Smith, the court concluded that Alaska's statute was narrowly tailored in requiring that political communications include a sponsor disclaimer stating who paid for the communication, the names and locations of the person or organization's top three contributors, and whether that communication was paid for by an outside-funded entity. 614 F. Supp. 3d at 675, 685–86. The challenged Alaska statute did not contain an off-ramp provision, and although other parts of the campaign finance regulations contained minimum contribution amounts to trigger reporting obligations, nothing in the on-ad disclaimer requirement imposed similar minimum donor

---

is there a set threshold of time before the election where disclaimers and disclosures can be required, and this Court is ruling on a facial challenge only since SFLA's communications came very close in time to a primary election and thus SFLA does not make this claim as a separate as-applied challenge." Id.

contribution amounts before the donor could be included on the ad as a "top three donor."  See
Alaska Stat. § 15.13.090.[12]

In No on E, the district court found that a requirement for "committees in San Francisco
[to] include on their advertisements a disclaimer disclosing their secondary contributors" was
narrowly tailored and rejected the two alternatives proposed by plaintiffs because Citizens United
did not imply that "an election-related disclaimer passes exacting scrutiny only if no hypothetical
alternative disclosure regime is conceivable," and "Plaintiffs provide no plausible reason to think
that either of their proposals would succeed at informing voters."  San Franciscans Supporting
Prop B, 604 F. Supp. 3d at 905, 911.  San Francisco's on-ad disclaimer ordinance required the ad
to identify "the committee's top three donors of $5,000," and "[i]f one of those contributors is
itself a committee, the ad must also disclose that committee's top two donors of $5,000 or more in
the last five months."  Id. at 906 (citing SF Code § 1.161(a)(1)).  Not only were the names of the
contributors required on the ads, "[i]n all ads other than audio ads, the names of both primary and
secondary contributors must be followed by the amount of money they contributed" in 14-point
font.  Id.

---

[12] Alaska Statute § 15.13.090 contains an internal reference to Alaska Statute § 15.13.400, which
defines an "outside-funded entity" as

> an entity that makes one or more independent expenditures in one or more candidate
> elections and that, during the previous 12-month period, received more than 50
> percent of its aggregate contributions from true sources, or their equivalents, who
> at the time of the contribution, resided or had their principal place of business
> outside of Alaska.

Alaska Stat. § 15.13.400(15).  This definition also does not include minimum donation amounts
to qualify as a "top three donor."

The Ninth Circuit affirmed that San Francisco's on-ad disclaimer was narrowly tailored in part because "an on-advertisement disclaimer is a more effective method of informing voters than a disclosure that voters must seek out." No on E, 85 F.4th at 509–10 (citation omitted). The Ninth Circuit highlighted, "Given the realities of voters' decision-making processes amidst a 'cacophony' of electoral communications, the district court was within its discretion to conclude that the secondary-contributor requirement has a scope in proportion to the City's objective." Id. (citation omitted). The Ninth Circuit then rejected the plaintiffs' argument that the law could not be narrowly tailored because it did not include any off-ramp provision. Id. at 510. The Ninth Circuit noted that other courts had concluded that disclosure laws were narrowly tailored in applying to donations earmarked for electioneering, but had not "suggested that, or had occasion to consider whether, a law fails narrow tailoring unless it is limited to the disclosure of earmarked contributions." Id. The Ninth Circuit further noted that the San Francisco ordinance was narrowly tailored because it required listing only the top donors to entities engaged in election-related activities. See id. ("By donating to a primarily formed committee, a secondary committee necessarily is making an affirmative choice to engage in election-related activity."); see also id. at 506 ("[A]dopting Plaintiffs' position could call into question the logic underlying decisions that uphold disclosure and disclaimer requirements as applied to primary donors . . . [as they] emphasize that the laws . . . further the governmental interest in revealing the source of campaign funding, not ensuring that every donor agrees with every aspect of the message.").

Like the plaintiffs in No on E, SFLA points to decisions where courts include a statute's off-ramp provision in support of their findings on narrow tailoring, Doc. 76 at 5. But precedent does not *require* a statute to contain an off-ramp provision for it to be narrowly tailored. See id. at 5–12. Although SFLA is correct that Wyoming Gun Owners v. Gray concluded that Wyoming's

campaign finance law was not narrowly tailored, that statute is distinguishable as it dealt with a more extensive and burdensome requirement that "organizations that spend over $1,000 [] issue an 'electioneering communication' to notify the state and file a statement identifying itself and the donors whose contributions made the communication possible;" that statute contained constitutionally vague language as opposed to the more limited, on-ad disclaimer requirement at issue in this case that this Court has already concluded is not void for vagueness. See 83 F.4th 1224, 1230, 1239 (10th Cir. 2023); Doc. 44. Similarly, the other case cited by SFLA from the District of Maine dealt with the constitutionality of a separate, much broader requirement that a "'person, party committee, or [PAC] that makes any independent expenditure in excess of $250 during any one candidate's election' disclose 'the *total* contributions from *each* contributor' regardless of the amount of the contribution" where the plaintiff had "aver[red] that multiple of its smaller dollar amount contributors have indicated that they will not contribute as they have done in the past if their identities will be publicly revealed." Dinner Table Action v. Schneider, No. 1:24-CV-00430, 2025 WL 1939946, at *5 (D. Me. July 15, 2025) (emphasis added); see also Doc. 76 at 7 (noting that Maine's on-ad disclaimer rule has not been challenged).

Although the Alaska statute in Smith and San Franscisco ordinance in No on E differ from South Dakota's statute in various aspects, both of those laws' requirements are arguably broader than South Dakota's requirements. Alaska's law does not have a minimum donor threshold or off-ramp provision and requires both names and locations of donors as well as a general on-ad disclaimer that the majority of entity's contributions, beyond the top three donors, came from outside of Alaska. Although San Francisco's ordinance does have a minimum donor amount set at $5,000, it further requires both primary and secondary contributors as well as the amounts contributed of the listed donors in 14-point font.

South Dakota's statute, where it applies, only requires listing the names of top five contributors during the last twelve months preceding the communication and a notation indicating that the "communication is independently funded and not made in consultation with any candidate, public office holder, or political committee." SDCL § 12-27-16(c). This requirement is only triggered if the person or entity makes a payment or promise of payment more than one hundred dollars for an independent communication expenditure. Id. § 12-27-16(1). Unlike the Alaska statute or San Francisco ordinance, whose laws were found to be narrowly tailored without an off-ramp provision, South Dakota does not require the publication of information on donors' locations or individual amounts contributed. As the Ninth Circuit aptly put it, "[c]ase law and scholarly research support the proposition that, because of its instant accessibility, an on-advertisement disclaimer is a more effective method of informing voters than a disclosure that voters must seek out." No on E, 85 F.4th at 509. SDCL § 12-27-16 is narrowly tailored despite the lack of an off-ramp provision or minimum donor donation amount.

Defendants have demonstrated a substantial relation between SDCL § 12-27-16's disclosure burdens and an important government interest and that SDCL § 12-27-16 is narrowly tailored to that informational interest. Defendants have shown on the record construed in favor of SFLA that SDCL § 12-27-16 survives exacting scrutiny. The record lacks evidence that there is a reasonable probability that the compelled disclosure of the top five donors to SFLA will subject them to threats, harassment, or reprisals from either Government officials or private parties. See supra Section III.A.1.b. Therefore, even if SFLA had standing to bring this as-applied challenge, Defendants remain entitled to summary judgment on the remaining claims before it.

### 2.  Plaintiff's Motion for Summary Judgment

On SFLA's motion for summary judgment, this Court must construe all facts and make reasonable inferences in the light most favorable to the Defendants as the non-moving party. Although SFLA does not raise arguments on standing in its motion, this Court has concluded above that SFLA lacks standing to bring this challenge. See supra Section III.A. However, even if SFLA had established standing, this Court would deny SFLA's motion for summary judgment. SFLA argues that SDCL § 12-27-16(1)(c)'s disclosure requirements violate the First and Fourteenth Amendment as applied to SFLA because the statute provides no "off-ramp" for donors to avoid disclosure. Doc. 67 at 6.

As discussed above, to survive "exacting scrutiny," the government must show "a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Citizens United, 558 U.S. at 366–67 (citation omitted). "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." Ams. for Prosperity, 594 U.S. at 608. This means the court will "require a fit that is not necessarily perfect, but reasonable." Id. at 609 (quoting McCutcheon, 572 U.S. at 218). The Defendants have satisfied that burden when viewing the factual record favorably to SFLA. The Defendants likewise shown, based on the undisputed facts and inferences in their favor, that South Dakota has a sufficiently important governmental interest to justify SDCL § 12-27-16 surviving an as-applied challenge.  Identifying donors of an organization who make independent communication expenditures informs voters of the source of the communication and helps them to gauge any bias, motives, and validity within the messages. See Citizens United, 558 U.S. at 371 ("[D]isclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This

transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages."). In addition, as discussed above, the statute's requirements substantially relate to that interest, and the statute is narrowly tailored. SFLA failed to produce evidence to establish standing, or, in the alternative, to support its as-applied challenge to SDCL § 12-27-16. Therefore, SFLA is not entitled to summary judgment on the remaining claims in the Amended Complaint. SFLA's failure to prevail on the merits justifies denial of its request for a permanent injunction. Doc. 67 at 16–17.

## IV.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, Doc. 64, is granted. It is further

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 67, is denied. It is further

ORDERED that the remaining claims regarding the as-applied portion of Count II concerning whether SFLA receives a "contribution" constitutionally subject to disclosure and the absence of "off-ramps" for donors to avoid on-ad listing requirements on certain messages are dismissed for lack of standing without prejudice.

DATED this 17th day of February, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

40